# United States Court of Appeals
## For the First Circuit

No. 15-1424

ELIZABETH CARRASQUILLO-ORTIZ; CARMEN GUZMÁN-VÁZQUEZ; DANIEL
OUVIÑA; VÍCTOR RIVERA; MATILDE RODRÍGUEZ-NOA; BRENDA ENID
VÁZQUEZ-DÍAZ; FRED VOLTAGGIO-DE JESÚS,

Plaintiffs, Appellants,

v.

AMERICAN AIRLINES, INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Gustavo A. Gelpí, Jr., U.S. District Judge]

Before Thompson, Hawkins,* and Barron,
Circuit Judges.

Alfredo Fernández-Martínez, with whom Delgado & Fernández,
LLC, was on brief, for appellants.
Juan Enjamio, with whom Hunton & Williams LLP was on brief,
for appellee.

January 22, 2016

---

* Of the Ninth Circuit, sitting by designation.

**BARRON**, **Circuit Judge**.  Article 3 of Puerto Rico's Law No. 80 ("Law 80") requires companies that operate in Puerto Rico to pay a statutory severance, called a "mesada," to their employees in Puerto Rico who are terminated as part of a downsizing or restructuring.  The mesada must be paid only if those employees were terminated even though less senior employees within their job category remain.  For a company with only one office, that calculation is fairly straightforward.  But for a company with several offices, it can be more complex.  The statute provides that for such a company, an employee's seniority must be computed in relation to the seniority of "all the employees of the company, that is to say, taking into consideration all of its offices," if the company regularly transfers employees among its offices and the offices operate in a "highly integrated manner."  P.R. Laws Ann. tit. 29, § 185c(b).

The dispute at hand concerns the proper application of this aspect of Article 3 to American Airlines, Inc. ("American"), the defendant here and a company with a lone office in Puerto Rico and many offices worldwide.  In particular, we must decide how to treat employee transfers American made to, from, and among its offices outside Puerto Rico.  Should those transfers be counted in determining whether American regularly transfers employees among its offices and thus in determining whether American must compute

the seniority of terminated employees in American's Puerto Rico office in relation to employees in American's offices worldwide?

The answer to that question is determinative of the appeal brought by the plaintiffs. They are seven former American employees who worked in American's sole Puerto Rico office. The plaintiffs concede that they were the least senior employees in the Puerto Rico office when American closed it down and let them go. Thus, the plaintiffs could be entitled to a mesada only if their seniority had to be computed in relation to American's offices generally, a computation that would be required only if American's transfers of employees outside Puerto Rico count under Article 3.

The District Court ruled in favor of American on the basis of the Puerto Rico Supreme Court's recent construction of Article 3 in Reyes Sánchez v. Eaton Elec., 189 P.R. Dec. 586 (2013). The District Court read the Puerto Rico Supreme Court to have construed Article 3 to count only those transfers that occur in Puerto Rico and to count none that are made to or from an office outside of it. Because we read that precedent as less definitive on the particular issue confronted here than the District Court deemed it to be, and because there is no other precedent from Puerto Rico courts that sheds relevant light, we certify the question of the proper interpretation of Article 3 to the Puerto

- 3 -

Rico Supreme Court, as the rules of that court permit us to do. <u>See</u> P.R. Laws Ann. tit. 32, app. III, Rule 53.1(f).

**I.**

Law 80 requires companies to pay a mesada to employees who are terminated without "just cause." <u>Otero-Burgos</u> v. <u>Inter American Univ.</u>, 558 F.3d 1, 7 (1st Cir. 2009). The statute provides six examples of just cause, including three that relate to company restructuring or downsizing. <u>See</u> P.R. Laws Ann. tit. 29, § 185b(d), (e), (f). If an employer terminates employees for one of those three reasons, however, the employer must give preference to those employees with greater seniority over those with less seniority within the same occupational classification. <u>Id.</u> § 185c. If the employer terminates a more senior employee and retains a less senior employee within the same occupational classification, the employer must pay the terminated employee a mesada. <u>Id.</u> §§ 185a, 185c.

Article 3 of Law 80 further establishes limits on the extent of the seniority analyses that must be performed by companies that "have several offices." <u>Id.</u> § 185c(a). In the case of companies "whose usual and regular practice is not to transfer employees from one office . . . to another, and that said units operate in a relatively independent manner with regard to personnel aspects," seniority is to be computed only with respect to the specific office where layoffs are occurring. <u>Id.</u> By

- 4 -

contrast, if the company's "regular and usual practice is to transfer its employees from one unit to another, and that the various units operate in a relatively integrated manner with regard to personnel aspects, seniority shall be computed on the basis of all the employees of the company, that is to say, taking into consideration all of its offices." Id. § 185c(b). Thus, the statute makes the transfer analysis a necessary predicate for a determination of how the company must "compute[]" seniority.

Here, the parties agree that American terminated the plaintiffs as a result of a company downsizing or restructuring that fit within one of the three subsections that trigger the application of Article 3. The parties further agree that after the termination of the plaintiffs, no employees in the plaintiffs' occupational classification -- less senior or otherwise -- remained in American's lone Puerto Rico office, which is based in San Juan. Finally, the parties agree that employees in the plaintiffs' occupational classification did remain employed in at least some of American's other offices worldwide.

The key dispute between the parties thus concerns how Article 3 applies to an employer with one office in Puerto Rico and multiple offices outside Puerto Rico.[1] Specifically, because

---

[1] The parties also dispute whether American has a "regular and usual practice" of transferring employees across its international offices. Because that dispute only becomes relevant upon the answer to the question we are certifying to the Puerto

American has just one office in Puerto Rico, we must decide whether the statute's predicate transfer analysis can be satisfied by transfers that are made to or from an office outside of Puerto Rico. If the transfer analysis cannot be satisfied that way, the plaintiffs' claim cannot succeed.

## II.

On its face, the text of Article 3 certainly could be read to accord with the plaintiffs' position. Article 3 makes no distinction between offices in Puerto Rico and those outside of Puerto Rico. Article 3 instead simply refers to the transferring of employees "from one office, factory, branch or plant to another," without defining any of those terms. Id. § 185c(a). Thus, plaintiffs contend that all of a company's transfers, including transfers to or from an office outside of Puerto Rico, count for the purpose of determining whether the company has a "regular and usual practice" of transferring its employees within the meaning of Article 3.

But the Puerto Rico Supreme Court appears to have read a significant limitation into the facially broad language of Article 3. In Reyes Sánchez, 189 P.R. Dec. at 608 (certified translation at 24), the Court held: "Article 3 . . . does not require an analysis of movement of personnel between the company's

Rico Supreme Court, we need not address it here.

- 6 -

establishments on an international level.  This analysis is limited to determining the frequency of transfers of employees between the company's establishments in the jurisdiction of Puerto Rico."[2]

Read literally, then, Reyes Sánchez appears to have held that transfers to or from offices outside of Puerto Rico are to be disregarded in considering whether a company has a "regular and usual practice" of transferring employees across offices.  And, on that understanding of Reyes Sánchez, a company with just one office in Puerto Rico, like American, can never have a "regular and usual practice" of transferring employees for the purposes of Article 3.  And so, such a company is never subject to the seniority requirements of subparagraph (b).

The plaintiffs' primary argument against affirmance is that Reyes Sánchez arose in a factual context different from the one we confront here and that the Court's holding was implicitly limited to that context.  Specifically, the plaintiffs note -- and the appellees appear to accept -- that the employer in Reyes Sánchez, Eaton Electrical de Puerto Rico, Inc., operated in Puerto Rico only as a subsidiary of a larger, multinational corporation, the Eaton Corporation.  For that reason, the plaintiffs contend that the only kinds of transfers to or from an office outside of

---

[2] For the purposes of our analysis in this case, we relied on the certified translation of Reyes Sánchez provided to us by the parties.  We have appended a copy of the certified translation to this opinion.

Puerto Rico that were at issue in Reyes Sánchez were transfers from one corporate entity to another. Since American is a single corporate entity, under which all of its offices worldwide operate, plaintiffs contend that a transfer from American's San Juan office to one of its offices in another jurisdiction would be a transfer between two offices within the same corporate entity. And so, the plaintiffs contend, Reyes Sánchez simply does not address how the statutory analysis applies to such a company.

Moreover, the plaintiffs contend, there is good reason to treat a company that operates in Puerto Rico only through a local subsidiary differently from one that operates as a single, global corporate entity with offices in Puerto Rico. The plaintiffs argue that because the latter type of company has directly availed itself of the laws of Puerto Rico, employee protections like those in Article 3 should apply without limitation on such a company. By contrast, a company that operates in Puerto Rico only through a local subsidiary has not availed itself of the laws of Puerto Rico, and thus only that subsidiary should be subjected to the restrictions imposed by Article 3.

But Reyes Sánchez did use seemingly broad language in announcing its holding. The Court focused its holding on the "international" nature of the transfers there at issue, which had been made from "Eaton's plant in Haina, Dominican Republic to Eaton's plant[s]" in Puerto Rico. Reyes Sánchez, 189 P.R. Dec. at

- 8 -

609 n.21 (certified translation at 25 n.21)  The Court also emphasized that Article 3's analysis was "limited to . . . transfers of employees between the company's establishments in the jurisdiction of Puerto Rico," Id. at 608 (certified translation at 24) without any mention of the apparent fact  that the transfers spanned two corporate entities.[3]

Moreover, the Court nowhere acknowledged, much less relied on, the apparent fact that Eaton Electrical de Puerto Rico, Inc., operated as a subsidiary of Eaton Corporation.  Instead, the court referred to Eaton Electrical de Puerto Rico, Inc., as "Eaton" and never mentioned Eaton Corporation.  Id. at 608 (certified translation at 24).  And then, when describing the international transfers at issue in that case, the Court referred to "Eaton's plant in Haina, Dominican Republic" using the same language it used to refer to "Eaton's plant in Las Piedras" (a city in Puerto Rico).  Id. at 607 n.20, 609 n.21 (certified translation at 22 n.20, 25 n.21).  Finally, when the Court applied its holding to the facts before it, the Court stated that "movement of personnel or transfers from Eaton's plants in other jurisdictions is not

---

[3] We note that it is not clear from the record whether the plaintiffs' contentions about the corporate relationship between Eaton Electrical de Puerto Rico, Inc. and Eaton Corporation were accurate as of the time of the Reyes Sánchez decision.  But those contentions are not challenged by American, nor expressly contradicted by Reyes Sánchez itself, which did not address the corporate status of the defendant in that case.

- 9 -

considered a transfer for purposes of establishing the frequency of transfers between the company's establishments in Puerto Rico." Id. at 609 (certified translation at 24-25) (emphasis added). Thus, the Court at no point indicated that it even knew, let alone considered, the fact that the Eaton plants in other jurisdictions may have been operated by a different corporate entity than those in Puerto Rico.

And the Reyes Sánchez Court's description of the legislative history of Article 3 is inconsistent with the plaintiffs' preferred reading of this precedent. The Court described Article 3 as "establish[ing] certain additional elements that companies that have more than one establishment in Puerto Rico must comply with." Id. at 602 (certified translation at 16) (emphasis added). The Court then noted that, prior to the enactment of subsections (a) and (b), the interpretation of the Puerto Rico Department of Labor and Human Resources was that "when a company that had several establishments reduced personnel, the order of retention based on seniority had to be established based on all of the employees of the different establishments of the company in Puerto Rico." Id. (emphasis added). Finally, the Court described the two subsections within Article 3 as having been enacted "to limit the circumstances under which an employee of an employe[r] that has several establishments in Puerto Rico is affected by reductions of personnel in establishments of the

- 10 -

company with which the employee has had no relationship whatsoever." Id. at 603 (certified translation at 17-18) (emphasis added).

Thus, Reyes Sánchez describes the two subparagraphs within Article 3 as placing a limit on a previously broad interpretation of Article 3, under which a seniority analysis was always required to span all of a company's offices in Puerto Rico. But if that understanding of Article 3's original scope is right, then on the plaintiffs' view, subparagraph (b) did not merely place a limit but also simultaneously broadened the scope of Article 3 dramatically, by creating an obligation to conduct a worldwide seniority analysis under some circumstances.

It is notable, therefore, that the Reyes Sánchez Court's description of the legislative history to Article 3 consistently referred to the two subparagraphs of Article 3 as a limitation impacting "companies that have more than one establishment in Puerto Rico." Id. at 602 (certified translation at 16) (emphasis added). By contrast, the Reyes Sánchez Court's description of that legislative history makes no reference to what plaintiffs contend is the linchpin of the provision: that transfers must be made within the same corporate entity, and not among different ones, even if they are related subsidiaries of the same parent company.

Nevertheless, a holding in favor of American would require an inference from silence as well. The Reyes Sánchez holding, although framed in broad terms, was crafted to dispose of a particular case with particular facts. The Court simply did not clearly address, because it had no occasion to address, a scenario in which the employer's Puerto Rico and other offices all operated within the same corporate entity. And, as noted, the plain text of Article 3, standing on its own, does not itself provide a ready basis for finding a general limitation of the kind the District Court, quite understandably, read Reyes Sánchez to have found residing in the statute.

We are thus left with a choice between applying the holding of Reyes Sánchez to a factual scenario it did not expressly address, or applying the unqualified text of the statute despite the Puerto Rico Supreme Court's having already limited that language in Reyes Sánchez. Faced with such a choice, our guide normally would be other Puerto Rico precedent interpreting Article 3 of Law 80. Here, however, it appears that no on-point precedent besides Reyes Sánchez exists. Neither American nor the plaintiffs have cited any such precedent, and we have found none.

Thus, we lack "sufficient guidance to allow us reasonably to predict" which of our two options the Puerto Rico Supreme Court would choose. See Pagán-Colón v. Walgreens of San Patricio, Inc., 697 F.3d 1, 18 (1st Cir. 2012) (quoting Ropes &

Gray LLP v. Jalbert (In Re Engage, Inc.), 544 F.3d 50, 53 (1st Cir. 2008).[4]  And although Reyes Sánchez contains a number of indicators suggesting that the Puerto Rico Supreme Court might be likely to extend that holding to this case, we are reluctant to "encroach on the prerogative of that court by resolving the question ourselves."  Id.; see Santiago-Hodge v. Parke Davis & Co., 859 F.2d 1026, 1033 (1st Cir. 1988) ("[O]ur creating an across-the-board rule may be unnecessary, and may offend the comity due to local courts, since Puerto Rico courts have never addressed this specific issue.").  Instead, this is a case "in which there are local issues of law that are decisive in the cause of action . . . , for which there are no clear precedents in the decisions of the Supreme Court of the Commonwealth of Puerto Rico," P.R. Laws Ann. tit. 32, app. III, Rule 53.1(f).  We thus believe the better course is, consistent with the plaintiffs' suggestion in their briefing to us, [Reply Br. 10-11], to certify the question in accordance with the rules of the Puerto Rico Supreme Court. See Pagán-Colón, 697 F.3d at 19.

---

[4] American argues that the remainder of the Reyes Sánchez opinion makes clear that the Court intended its holding to apply broadly, but we can spot no passage from the opinion that could not be read consistently with the plaintiffs' position.

## III.

Accordingly, we hereby **certify** the following question to the Puerto Rico Supreme Court:

> In Reyes Sánchez v. Eaton Elec., 189 P.R. Dec. 586, 608 (2013), the Puerto Rico Supreme Court stated that the analysis of employer transfer activity under Article 3 of Law 80 "is limited to determining the frequency of transfers of employees between the company's establishments in the jurisdiction of Puerto Rico." Under Reyes Sánchez, does that limitation apply where the employer has one office in Puerto Rico and multiple offices in other jurisdictions and operates all of its offices under the same corporate entity?

We would also welcome any further guidance about relevant Puerto Rico law that the Puerto Rico Supreme Court may choose to provide. See Boston Gas Co. v. Century Indem. Co., 529 F.3d 8, 24 (1st Cir. 2008).

The Clerk of this court is directed to forward to the Puerto Rico Supreme Court, under the official seal of this court, a copy of the certified question and our opinion in this case, along with copies of the briefs and appendix filed by the parties. We retain jurisdiction over this appeal pending resolution of the certified question.

**-Appendix Follows-**

## IN THE SUPREME COURT OF PUERTO RICO

| | |
|---|---|
| Zoraida Reyes Sánchez<br><br>Respondent<br><br>v.<br><br>Eaton Electrical D/B/A<br>Eaton Electrical Las Piedras; Jane Doe<br><br>Petitioners | Certiorari<br><br>2013 TSPR 108<br><br>189 DPR ___ |

Case Number: CC-2011-191

Date: October 7, 2013

Court of Appeals:

      Caguas Judicial Region

Attorneys for the Petitioners:

      Mr. Russell del Toro, Esq.
      Ms. Myriam Matos Bermúdez, Esq.

Attorney for the Respondent:

      Mr. Alejandro Torres Rivera, Esq.

Matter: Labor Law – Art. 3 Law 80-1976: Employee retention order based on seniority in the company

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

IN THE SUPREME COURT OF PUERTO RICO

| | | |
|---|---|---|
| Zoraida Reyes Sánchez | | |
| Respondent | | |
| v. | | CC-2011-0191 |
| Eaton Electrical D/B/A Eaton Electrical Las Piedras; Jane Doe | | |
| Petitioners | | |

Opinion of the Court issued by Associate Judge Rodríguez Rodríguez

In San Juan, Puerto Rico, on October 7, 2013

This case gives us the opportunity to state our opinion regarding the employee retention order based on seniority established by Article 3 of Law No. 80 enacted on May 30, 1976, 29 L.P.R.A. 185a-185m, known as the Wrongful Termination Compensation Act ("Law No. 80"). In particular, we must determine whether the seniority of an employee must be calculated based on the time that the latter has worked under the occupational classification performed by the employee or whether said calculation must include the entire time that the employee has worked in the company. Furthermore, we have the opportunity to state our opinion regarding the employee retention order based on seniority to be followed by companies that have more than one establishment.

Below is a summary of the facts resulting in the controversy that we are considering.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

I

Eaton Electrical de Puerto Rico, Inc. ("Eaton") is a corporation that carries out business in Puerto Rico. On February 16, 2001, Ms. Zoraida Reyes Sánchez, who has a bachelor's degree in Industrial Engineering, started working as Quality Manager at the Eaton plant in Coamo, doing business as Cutler-Hammer.[1] Subsequently, she was promoted to the position of Engineering and Quality Manager. In March of 2006, Eaton, through the Eaton Jobs program,[2] published, electronically, a notice of vacancy for the position of Technical Services Manager at the Las Piedras plant.

In response to the above-referenced notice, Ms. Reyes Sánchez applied for and was selected to occupy the vacant position. Upon being appointed as Technical Services Manager, she became a member of the Staff occupational group ("Staff group") at the plant in Las Piedras. The Staff group was composed of salaried employees who reported directly to the General Manager of the plant in Las Piedras. In April of 2008, Eaton announced that, due to a reduction in product demand, it would have to take personnel reduction measures. For said purposes, Eaton began a voluntary separation

---

[1] For purposes of the controversy that we are considering, the fact that Eaton and Cutler-Hammer are the same company is not in controversy.

[2] Eaton Jobs is a company program that consists in publishing employment opportunities for its employees at the different Eaton plants globally. In conformity with this program, an interested employee applies for and is evaluated by the plant seeking to fill the position or vacancy.

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

program at the Las Piedras plant. However, the company excluded, from the voluntary separation program, the Staff group employees who were working on the Lightspeed project in which Ms. Reyes Sánchez was working.

In May of 2008, while the voluntary separation program was in effect, Mr. Eddy Del Carmen Tave, who had worked for Eaton since May 24, 1994,[3] was promoted to the position of Lightspeed Manager.[4] As a result of the promotion, Mr. Del Carmen Tave also became a member of the Staff group at the plant in Las Piedras. Upon conclusion of the voluntary separation program, Ms. Linda Jane Littke, Eaton Manager of Human Resources at Las Piedras, announced to the Staff group that the number of persons who had enrolled in the voluntary separation program was not enough and that, as a result, the company would begin terminating employees involuntarily. Consequently, on June 27, 2008, Ms. Reyes Sánchez was notified that she would be terminated and that her position would be eliminated as a result of the company's financial problems.[5] The effective date of termination was July 15, 2008. However, Mr. Del Carmen Tave remained working at the Eaton plant in Las Piedras.

---

[3] The parties stipulated Mr. Del Carmen Tave's start date in the company.

[4] Before his promotion, Mr. Del Carmen Tave had worked in several company plants, performing duties under different occupational classifications.

[5] In addition to Ms. Reyes Sánchez, the following three (3) employees were also terminated on that same date: Rolando Cartagena, Cándido Rivera and Roselyn Aponte.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Based on these facts, on January 23, 2009, Ms. Reyes Sánchez filed an action for wrongful termination in the Court of First Instance, Superior Court of Caguas.[6] In her claim, Ms. Reyes Sánchez stated that Mr. Del Carmen Tave was an employee with less seniority under the occupational classification of the Staff group and that, consequently, her termination had been a wrongful termination. She also argued that, when calculating seniority, Eaton had to take into consideration the time that the employees had worked in the Staff group, not the entire time that they had worked in the company. Furthermore, she stated that, in accordance with subparagraph (b) of Article 3 of Law No. 80, Eaton must calculate the seniority of the employees in the Staff group at all company plants since the usual and regular practice of Eaton was to transfer employees between its plants and the different plants were operated in a substantially integrated manner in relation to personnel aspects.[7]

After the filing of the Preliminary Conference Report between Attorneys, on October 1, 2009, Eaton

---

[6] Ms. Reyes Sánchez filed a complaint under the summary procedure of Law No. 2 enacted on October 17, 1961, 32 L.P.R.A. sec. 3118.

[7] Under the theory argued by Ms. Reyes Sánchez in the Pre Trial Report between Attorneys, she listed and alleged a series of incidents with Mr. Rick Rattliff, General Manager of Eaton, and with Ms. Linda Jane Littke, Human Resources Manager. However, the cause of action of the plaintiff was filed under Law No. 80 and is based on the fact that her termination was a wrongful termination since she was not the person with less seniority in the company.



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

filed a motion for summary judgment. In essence, Eaton argued that the termination had been justified as a result of the reorganization of the company and, in compliance with the employee retention order based on seniority, Ms. Reyes Sánchez was the employee with less seniority under her occupational classification at the Eaton plant in Las Piedras.[8] At the appropriate time, Ms. Reyes Sánchez filed a motion in opposition to the motion for summary judgment in which she alleged that Mr. Del Carmen Tave was the employee with less seniority, since he was the person that had been working the least amount of time in the Staff group at the plant in Las Piedras. Furthermore, she reiterated that the usual and regular practice of Eaton was to transfer its employees between plants and that, as a result, Eaton should have established an employee retention order based on seniority taking into account all company plants. Therefore, she argued that a summary judgment should not be issued in favor of Eaton since there were essential facts in controversy.

The Court of First Instance denied the motion for summary judgment. However, following a reconsideration, it issued a summary judgment in favor of the plaintiff, granted the cause of action for wrongful termination, and ordered payment of compensation. The court based its decision on the fact that, when calculating the

---

[8] It should be noted that, in the controversy that we are considering, the identity of the occupational classification occupied by Ms. Reyes Sánchez and Mr. Del Carmen Tave is not in controversy.

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

seniority of an employee for purposes of establishing the retention order based on seniority, the only time that must be taken into consideration is the time that the employee has worked under the occupational classification at the time of the reduction in personnel, not the entire time that the employee has worked in the company. Based on said interpretation of the law, it concluded that Ms. Reyes Sánchez had been wrongfully terminated since she had spent more time working in the Staff group than Mr. Del Carmen Tave, in spite of the fact that he had spent more time working in the company. Dissatisfied, Eaton filed a timely appeal in the Court of Appeals, which confirmed the judgment of the trial court.

Dissatisfied with said decision, Eaton turned to this Court and alleged, in its relevant part, that the appeals court erred by concluding that in order to determine the seniority of an employee one should only calculate the time that the employee has worked under his or her occupational classification at the time of the reduction in personnel, excluding the time that the employee has worked under other occupational classifications in the company. Furthermore, it argued that a summary judgment should be issued in its favor since there were no essential facts in controversy and since it was enforceable as a matter of law.

Subsequently, regarding the above controversy, on June 17, 2011, we issued the requested writ. And with the appearance of both parties, below is our decision.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

## II

A summary judgment is a procedural mechanism whose purpose is to provide a fair, quick and economic solution to litigations. Rule 36.1 of Civil Procedure, 32 L.P.R.A. App. III, R. 36.1; *Quest Diagnostics v. Mun. San Juan*, 175 D.P.R. 994 (2009). To wit, the summary judgment mechanism allows the court to issue a judgment without having to hold an evidentiary hearing or trial, when the unchallenged documents attached to the request—and the pleadings as a whole—reveal the inexistence of a controversy regarding the essential or material facts, and so the only thing left to do is to apply the law. *Partido Acción Civil v. E.L.A.*, 150 D.P.R. 359 (2000).

The court must not issue a summary judgment when: (1) there are essential facts in controversy; (2) there are affirmative allegations in the complaint that have not been refuted; (3) the documents attached to the motion reveal a real controversy regarding any essential or material fact; or (4) it is not enforceable as a matter of law. *González v. Multiventas*, 165 D.P.R. 873, 889 (2005); *PFZ Properties, Inc. v. General Accident Insurance Co.*, 136 D.P.R. 881, 913–914 (1994).

For purposes of a summary judgment, an essential or material fact is one which could affect the result of the claim in accordance with the applicable substantive law. *Ramos Pérez v. Univisión*, 178 D.P.R. 200 (2010). The party requesting it must prove that there is no controversy regarding the essential facts of the case and,

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

if it does so, a summary judgment must be issued as a matter of law. *Id.* pp. 217-218.

In order to prevent issuance of a summary judgment, the party objecting to the request must state in detail and with specificity the essential facts in controversy which merit that the case be considered in a trial on the merits; it cannot rely on the affirmations or denials contained in its allegations. 32 L.P.R.A. App. V., R. 36.3(c). Furthermore, when the request for summary judgment is based on sworn statements or other evidence, the respondent cannot rely on mere allegations and must present substantial evidence regarding the essential facts in controversy. *Ramos Pérez*, 178 D.P.R. page 215.

In the event that the parties have performed an adequate and appropriate discovery, a summary judgment must be issued when: (1) the petitioner shows that a hearing on the merits is not necessary; (2) the respondent does not provide sufficient evidence to prove an essential element of its case; and (3) dismissing the action is enforceable as a matter of law. *Id.* pp. 217-218; *See, also, Medina v. M.S. & D. Química P.R., Inc.*, 135 D.P.R. 716, 732-733 (1994).

For its part, the appeals court, as the reviewing forum, shall use the same criteria used by the trial court when it determined whether the request for summary judgment was enforceable. *Vera v. Dr. Bravo*, 161 D.P.R. 308, 334 (2004). However, the reviewing forum is limited to considering

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

the documents filed in the trial court and determining whether or not there is a controversy regarding essential facts and whether the law was applied correctly. *Vera*, 161 D.P.R. page 335. The reviewing forum does not adjudicate credibility; it must presume as true all of the unchallenged facts contained in the case files. *González*, 165 D.P.R. page 889.

### III

### A

Law No. 80 has two main purposes. On the one hand, it intends, by way of a penalty, to dissuade from the practice of employers of terminating employees without just cause. On the other hand, it has a remedial end by providing to employees remedies that are consubstantial to the injuries caused by wrongful terminations. *Beauchamp v. Holsum Bakers of P.R.*, 116 D.P.R. 522, 526 (1985); *See, also,* Statement of Purpose, Law No. 80, 29 L.P.R.A. sec. 185a, 1976 Laws of Puerto Rico 268. Article 11 of Law No. 80 establishes that the employer is the one who must refute the presumption that the termination was carried out without just cause.[9] 29 L.P.R.A. sec. 185k. To wit, the employer has the obligation to prove that the termination

---

[9] As established in *Rivera Figueroa v. The Fuller Brush Co.*, 180 D.P.R. 894 (2011), Art. 11 requires that the employee show that: (1) he or she was the employee of a commercial establishment, industry, or other business; (2) his or her contract had an undetermined term; (3) he or she received compensation for his or her work; and (4) he or she was terminated from his or her position by direct termination or by constructive or tacit termination.

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

was justified in order to be exempted from the payment of compensation. 29 L.P.R.A. sec. 185k.

Even though Law No. 80 does not provide a definition of wrongful termination, Article 2 of the Law establishes a series of situations under which a termination shall be considered justified. 29 L.P.R.A. sec. 185b; *See Srio. del Trabajo v. GP Inds., Inc.*, 153 D.P.R. 223, 242–245 (2001). The latter are divided into two areas: situations that are attributable to the employee and situations that are attributable to the employer. The controversy in this case requires that we review the circumstances that are considered as attributable to the employer, to wit:

The following shall be considered just cause for termination of the employee of an establishment:

. . .

(d) The total, temporary or partial closing of the operations of the establishment. It is hereby provided that in cases in which the company has more than one office, factory, branch or plant, the total, temporary or partial closing of any of these establishments shall constitute just cause for termination in accordance with this section.

(e) Technological or reorganizational changes, as well as changes in style, design or nature of the product produced or managed by the establishment, and changes in the services provided to the public.

(f) Employment reductions that are necessary as a result of a reduction in production volume, sales, or earnings, whether foreseen or current at the time of the termination.[10]

---

[10] The following are the ones attributable the employee:

(a) A pattern of improper or disorderly conduct by the worker.

(b) An attitude of the employee of not performing his or her job in an efficient manner or performing it belatedly and negligently or in violation of the rules of quality of the product produced or managed by the establishment.

(c) A reiterated violation by the employee of the rules and regulations established for the operation of the establishment, as long as a written

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

29 L.P.R.A. sec. 185b.

The above-referenced subparagraphs describe situations dealing with actions of an employer, related to the administration of its business in the course and daily operation of companies, that are mainly based on financial reasons. *Díaz Fontánez v. Wyndham Hotel Corp.*, 155 D.P.R. 364, 376 (2001). To wit, it deals with situations "that are not attributable to the worker but the nature of which is such that his or her termination is practically inevitable under the usual and ordinary rules governing the administration of businesses." Joint Report, Labor and Civil Rights and Public Service Commissions, House Bill 1112, April 23, 1975, page 3.

Therefore, "just cause for termination shall be a termination based, not on the free will or caprice of the employer, but a termination related to the orderly and regular operation of the company in question." *Díaz Fontánez*, 155 D.P.R. page 376. Moreover, in cases in which employees are terminated for reasons attributable to the employer, the latter has the duty to comply with the employee preferential retention order established by Article 3 of the Law ("Article 3"), 29 L.P.R.A. sec. 185c.[11] Therefore, even if the employer is able to

---

copy of the same has been provided at the appropriate time to the employee. 29 L.P.R.A. 185b.

[11] The Law exempts the employer from following the employee retention order based on seniority in cases in which, following a comparison of the workers, there is a clear and indisputable difference in the efficiency and capacity between

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

justify the need to carry out terminations under subparagraphs (d), (e) and (f) of Article 2 of Law No. 80, the latter must follow the employee retention order provided by Article 3 of the law. In this regard, Article 3 provides the following:

In any case in which employees are terminated for the reasons indicated in subparagraphs (d), (e) and (f) of sec. 185b of this title, **the employer shall be obligated to retain, with preference in the job, the employees with more seniority as long as there are vacant positions or positions occupied by employees with less seniority in the job within his or her occupational classification that can be performed by them.**
29 L.P.R.A. sec. 185c (emphasis added).

Consequently, in case of terminations for reasons attributable to the employer, the latter must retain the employees with more seniority in the occupational classification in which it will carry out the terminations, as long as there are vacant positions or positions occupied by employees with less seniority. The legislative assembly thereby clarified that the employee retention order based on seniority shall be carried out taking into consideration the occupational classification of the employees. Therefore, it prohibited the displacement of employees between different occupational classifications ("bumping") in cases of personnel reductions under the provisions of Law Number 80.[12] Furthermore, under the above-referenced precept,

---

them. 29 L.P.R.A. sec. 185c. Said exception is not in controversy in this case.

[12] Also, said clarification had the effect of preventing an employee, with more seniority but without the capacity to perform a duty outside of his or her occupational classification, from displacing employees with less seniority in other occupational classifications. *See* Report to the House of

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

the legislative assembly established the duty of the employer to retain, with preference, the employees with more seniority in the job, within the occupational classification in which terminations are being carried out.[13]

The Guidelines for the Interpretation and Application of Law No. 80 ("Guidelines"), created by virtue of the power conferred upon the Secretary of Labor and Human Resources to adopt and promulgate the necessary regulations for the administration of Law No. 80,[14] interpret Article 3 in the following manner:

In the event of a need to terminate employees within one or more occupational classifications, the employer shall be obligated to retain, with preference, in said classifications, the employees with the most seniority in the company, as long as there are vacant positions or positions occupied by employees with less seniority in the job under their occupational classification, which may be performed by the latter. For this purpose, the entire continuous and interrupted time worked in the company shall be taken into consideration, regardless of the occupational

---

Representatives of the Commerce and Industry Commission, May 26, 1975; *see, also,* Consultation of the Labor Advocate No. 12,179, Department of Labor and Human Resources of Puerto Rico, February 22, 1983.

[13] Failure to comply by the employer with the requirement of establishing an employee retention order based on seniority shall result in the imposition of liability for wrongful termination. Therefore, establishing an employee retention order based on seniority "is a matter that should be thoroughly pondered." Alberto Acevedo Colom, *Legislación Protectora del Trabajo Comentada* 155 (8th ed. 2005).

[14] By virtue of Law No. 67, enacted on July 3, 1986, 29 L.P.R.A. sec. 185m, the Legislative Assembly amended Law No. 80 to authorize the Secretary of Labor and Human Resources ("Secretary") to adopt and promulgate the necessary regulations to administer Law No. 80. For this purpose, in the year 1979, the Secretary approved the "Guidelines for the Interpretation and Application of Law No. 80 of May 30, 1976, as amended." On September 21, 2000, the Department of Labor and Human Resources published the "Revised Guidelines of Law No. 80 of May 30, 1976".


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

classifications that have been performed.

Department of Labor and Human Resources for the Commonwealth of Puerto Rico, Guidelines for Interpretation and Application of Law No. 80, p. 39 (2000).

Specifically, as regards the controversy under our review, the Guidelines state the following:

In order to calculate the seniority of an employee for purposes of determining his right to retention and preferential reemployment, all of the time that the employee worked for the company from the last time that he was recruited shall be considered, without being limited to the time worked in the last position occupied.

Department of Labor and Human Resources for the Commonwealth of Puerto Rico, Guidelines for Interpretation and Application of Law No. 80, p. 39 (2000).

Lastly, in order to better understand Article 3, the Guidelines establish the following example:

[A] worker, designated "A" who begins working for the company as a dispenser and works in that position for two (2) years. From dispenser he goes on to become a salesman, where he works for three (3) years and is then promoted to manager where he works for five (5) years. In the event that the company has the need to fire one or more managers while retaining others, "A" has a seniority of ten (10) years and in the event that the company has a manager, designated "B", who has been working, let's say, eight (8) years as a manager, but has only been working for the company for nine (9) years, "A" has a right to be preferentially retained over "B" based on the seniority criteria.

Department of Labor and Human Resources for the Commonwealth of Puerto Rico, Guidelines for Interpretation and Application of Law No. 80, p. 39.

In accordance with the above, the seniority of an employee should be calculated from the moment he or she begins to work for the company, regardless of the employee's movement between different occupational classes in the

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

company.[15] To that end, the company shall identify the group of employees in the occupational class where a reduction of personnel shall occur, and within said group, calculate the accumulated seniority of each employee since he or she began working for the company.

We agree with the interpretation of the Guidelines which recognizes the legislative intention of protecting the increase in value of the employee who progresses and remains in his or her workplace. Said interpretation is consistent with the provisions of Article 1 of Law No. 80, which provides that "[y]ears in service shall be determined on the basis of all of the prior accumulated work periods that the employee worked for the employer prior to being terminated." 29 L.P.R.A. sec. 185a. In turn, it is consistent with the underlying values of Law No. 80 of promoting the employee's stability in his or her employment unless there is just cause for termination. *See* Legislative Background of S.B. 1112, which became Law No. 80 enacted on May 30, 1976, Session Journal for the Legislative Assembly, May 24, 1975; *see also* Ruy Delgado Zayas, Notes for the study of: Employment Protection Legislation 162 (1988 rev. 2007). Any other interpretation would lead us to an unfair and absurd result against an employee who, throughout

---

[15] This has been acknowledged by Labor Law practitioners and academics in Puerto Rico. *See* Alberto Acevedo Colom, Annotated Employment Protection Legislation, 5 (8th Ed. 2005); Charles Zeno Santiago, Termination and social policy in our state of law, 34 Rev. Jur. U.I.P.R. 213, 225 (2000).

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

the years has been an example of loyalty, self-improvement and perseverance.

B

Article 3 of Law No. 80, furthermore, establishes certain additional elements that companies that have more than one establishment in Puerto Rico must comply with when determining the retention order of employees based on seniority. This is because, during the first ten (10) years from the approval of Law No. 80, there was a legal lacuna as to the order of retention for employees based on seniority in companies that had more than one business establishment in Puerto Rico. At that time, the law was silent as to whether, when reducing personnel in one of the company's establishments, the order of retention of employees according to seniority had to be carried out based on all of the company's employees or only based on the employees that worked in the establishment where there was going to be a reduction of personnel. For several years, the interpretation of the Department of Labor and Human Resources was that when a company that had several establishments reduced personnel, the order of retention based on seniority had to be established based on all of the employees of the different establishments of the company in Puerto Rico. *See* Report of the Veteran's Affairs and Labor Commission for the House of Representatives regarding substitution of S.B. 908 from May 30, 1986.



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

By employing this interpretation, the Department of Labor and Human Resources intended to prevent, for example, a business with several establishments from transferring employees that it wished to terminate to establishments where it was going to carry out personnel cuts. *Id*, p. 2. Therefore, under the interpretation that prevailed then, in personnel reductions, employees with more seniority in the company always prevailed over employees with less seniority, regardless of the distance or of the relationship between the different establishments of the company. After a while, however, the Department of Labor and Human Resources modified its interpretation due to the effect that it had on employees of an establishment that had no relationship with the establishment that was the subject of the personnel reduction. *Id.* pp. 2-3.

To that end, through Law No. 146 enacted on July 18, 1986, 20 L.P.R.A. sec. 185c ("amendment"), Law No. 80 was amended to add two (2) paragraphs to Article 3 of the Law, intended in fact to clarify the process of the order of retention of employees by seniority in companies that have more than one office, factory, branch or plant ("establishment").[16] By means of said amendment, legislators intended to limit the circumstances under which an employee

---

[16] The Legislative Assembly adopted the interpretation that the Department of Labor and Human Resources had been developing regarding the order of retention of employees by seniority in companies with more than one office, factory, branch or plant. *See* Report of the Labor Commission to the Senate regarding substitution of S.B. 908 from May 12, 1986.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

of an employee that has several establishments in Puerto Rico is affected by reductions of personnel in establishments of the company with which the employee has had no relationship whatsoever. *See* Report of the Labor Committee to the Senate regarding the Substitution of S.B. 908 enacted in May 21, 1986. The above, without failing to defend the right of preferential retention based on seniority of employees that work in companies in which the different establishments did have close company bonds. In that balance of interests, the following was provided:

(a) Concerning personnel reduction or terminations based on the reasons included in paragraphs (d), (e) and (f) of sec. 185b of this title **in companies that have several offices, factories, branches, and which have the customary and regular practice that employees of an office, factory, branch or plant do not transfer to a different one, and where said units operate substantially independently as to aspects regarding personnel, seniority of employees within the occupational classification which is the subject of personnel reduction shall be calculated taking into account solely employees in the office, factory, branch or plant in which said personnel reduction shall be carried out.**

(b) As to companies with several offices, factories, branches or plants in which there is the usual and customary practice where employees transfer from one unit to another and the different units operate in a manner that is substantially integrated as to personnel aspects, seniority shall be calculated based on all of the employees of the company, that is, taking into account all of the offices, factories, branches or plants which are in the occupational classification that is the subject of personnel reduction. 20 L.P.R.A. sec. 185c (emphasis added).

In accordance with the above, and as regards the controversy that we are considering, for a company that has several establishments to calculate

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

seniority of employees solely among such employees that work in the establishment in which there shall be personnel reduction, it will have to establish that there are not frequent employee transfers among its establishments.[17] Furthermore, it shall have to demonstrate that its establishments operate independently as to aspects of personnel, that is, mainly, recruitment, termination and retention of employees.[18] This way, the legislator limited the circumstances in which, for purposes of establishing the order of retention of employees by seniority, all of the employees of different establishments of the company in the occupational class which will undergo a personnel reduction shall have to be considered. This shall not affect the preferential retention right based on seniority of such employees that work in companies among whose different establishments in Puerto Rico, frequent transfers are carried out, or which operate in a manner that is substantially integrated as to personnel aspects.

---

[17] It should be noted that isolated, unusual or irregular transfers shall not be enough to conclude that the establishments of a company operate in an integrated manner. This analysis, however, warrants adapting to the peculiarities of the occupational classification of the terminated employee and in accordance with the circumstances of each controversy.

[18] For purposes of the Law, "[t]he term 'personnel aspects'... refers mainly to the personnel recruitment, termination, and retention phase, and does not necessarily refer to the question of preparation of payroll and benefits." Report of the Veteran's Affairs and Labor Commission to the House of Representatives regarding the Substitution of S.B. 908 from May 30, 1986, p. 3.

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

IV

Having discussed the applicable regulations, let us decide the controversy that is the subject of our review.

In this case, Mr. Del Carmen Tave began to work in Eaton on May 24, 1994, seven (7) years prior to Ms. Sanchez Reyes, who began to work in Eaton on April 16, 2001. However, Mr. Del Carmen Tave began to work in the occupational classification of the *Staff* group after Ms. Reyes Sanchez. Based on these facts, the intermediate appellate forum decided that it should decide through summary judgment on behalf of Ms. Reyes Sanchez as it believed that Eaton did not comply with the retention order of employees based on seniority established in Article 3 of Law No. 80. The intermediate appellate forum believed that, by virtue of Article 3 of the Law, Ms. Reyes Sanchez had more seniority than Mr. Del Carmen Tave since she worked longer in the occupational class of the *Staff* group, and therefore, her termination was unjustified. It is incorrect.

In accordance with the provisions of Article 3 of Law No. 80, and the interpretation established by the Guidelines that we adopt today, an employee's seniority should be calculated by adding the total time that he or she worked in the company, regardless of the movement of the employee in different occupational classifications. Therefore, despite the fact that Mr. Del Carmen Tave had worked for



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

less time in the *Staff* group position than Ms. Reyes Sanchez, he had worked longer in the company. Therefore, Mr. Del Carmen Tave had greater seniority in employment than Ms. Reyes Sanchez. The company acted correctly when it decided that Mr. Del Carmen Tave had greater seniority than Ms. Reyes Sanchez in the *Staff* group occupational classification. Having decided this, it remains to be determined whether there are essential facts that are in controversy which prevent reaching a decision in this case in a summary fashion.

As revealed in this case file, Eaton is an international company that has several establishments in Puerto Rico. Therefore, it must prove, furthermore that it has complied with the provisions of this Article 3 of Law No. 80 related to companies with more than one establishment.[19] To that end, in the summary judgment request, Eaton maintained that it does not make transfers and its plants operate in a manner that is substantially independent as to personnel aspects. Appendix of the *certiorari* petition, pp. 94-95. Therefore, it maintained that it complied with the retention order for employees according to seniority when it calculated the seniority among the employees in the *Staff* group occupational class in the Eaton Plant located in Las Piedras and deciding that

---

[19] This is consistent with Article 11 of Law No. 80, 29 L.P.R.A. sec. 185k, which requires that in any claim filed by an employee under this Law, the employer is obligated to prove that the termination was justified.

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Ms. Reyes Sanchez was the employee with less seniority. *Id.*

In the motion in opposition to the request for summary judgment, Ms. Reyes Sanchez, besides arguing that for purposes of establishing the order of retention of employees based on seniority Mr. Del Carmen Tave had less seniority than her, argued that Eaton had the usual and regular practice of transferring its employees from one plant to another, and that it operated in a manner that was substantially integrated as to personnel aspects. Appendix to petition for *certiorari*, pp. 154, 164-165. Therefore, she argued that Eaton should establish an order of retention for employees according to seniority based on all of the company's plants. To support said allegation, Ms. Reyes Sanchez alleged that under Eaton's "Power of One" program (Eaton Jobs), the employees of Eaton's different plants could compete for positions that would be published in any of the company's plants on a global level. Additionally, in a sworn statement that was included with the motion in opposition to summary judgment, she argued that six (6) employees, including herself, had been transferred among Eaton's different plants, four (4) of which had been transferred to Eaton's plants in other jurisdictions to Puerto Rico.[20] Appendix to petition for

---

[20] These are: Zoraida Reyes Sánchez, from Eaton's Coamo plant to Eaton's plant in Las Piedras; Eddy Del Carmen Tave, Kevin Pimentel and Jorge Tarafa, from Eaton's plant in Haina, Dominican Republic to Eaton's plant in Las Piedras; Samuel Rivera, from Eaton's plant in Haina, Dominican Republic, to Eaton's plant in Coamo;



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

*certiorari*, p. 169. As indicated below, said allegations are not sufficient to refute the essential facts that are in controversy.

In the motion for summary judgment, Eaton maintained that as part of an internal policy of the company, it has a program called "Eaton Jobs" in which its employees can compete for vacant positions in any of Eaton's plants around the world. Appendix to *certiorari* petition, pp. 92-95. As described, the company, through an electronic system, publishes employment opportunities for its employees in the company's different plants on an international level, including Eaton's plants in Puerto Rico. This way, Eaton's employees, according to their prerogative and interest, can request vacant positions that are announced through the electronic system. After all of the requests have been assessed, the management of the plant which the employee applied to determines the candidate to cover the vacant position. Thus, although under the "Eaton Jobs" program, different employees of the company compete for vacant positions, the plant has the discretion and authority to choose the employee it prefers from the applications.

In accordance with the characteristics described above of the "Eaton Jobs" program, we believe that the movement of employees throughout the program does not constitute transfers for purposes of Article 3 of the Law. The protection that

---

and Jeanette Tripory, of Eaton's Cabo Rojo plant to Eaton's plant in Las Piedras.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

legislators wished to offer does not extent to the movement of employees who participate voluntarily in a competitive program for application for employment such as "Eaton Jobs." Therefore, the allegation by Ms. Reyes Sanchez that the company carried out frequent transfers under the "Eaton Jobs" program was insufficient to establish essential facts in controversy. Let us now consider the six (6) specific transfers alleged by Ms. Reyes Sanchez.

As revealed in the facts of this case, the movement by Ms. Reyes Sanchez from the Coamo plant to the Las Piedras plant was through the "Eaton Jobs" program. Therefore, as we established, Ms. Reyes Sanchez's movement is not considered a transfer for purposes of Article 3 of the Law. As to the transfers alleged which arose from establishments in other jurisdictions, we believe Article 3 of the Law does not require an analysis of movement of personnel between the company's establishments on an international level. This analysis is limited to determining the frequency of transfers of employees between the company's establishments in the jurisdiction of Puerto Rico.

Consequently, movement of personnel or transfers from Eaton's plants

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

in other jurisdictions is not considered a transfer for purposes of establishing the frequency of transfers between the company's establishments in Puerto Rico.[21] Therefore, only one (1) of the transfers between Eaton's plants in Puerto Rico alleged by Ms. Sanchez could be considered a transfer for purposes of the Law.[22] This is not enough to controvert the fact that Eaton did not carry out **frequent** transfers of employees between its plants in Puerto Rico.

Lastly, as we discussed, Eaton indicated that its plants operate independently as to personnel aspects. Therefore, alleging that due to the "Power of One" (Eaton Jobs) program, Eaton's different plants operated in a manner that was substantially integrated as to personnel aspects is not sufficient to controvert the fact that Eaton's different plants operated in a substantially independent manner as to personnel aspects. In this stage of the proceedings, having concluded discovery, Ms. Reyes Sanchez should have submitted such evidence to substantially controvert the facts alleged by the company. Instead, she rested on the allegations contained in her complaint and limited herself to restating her allegations in a sworn statement that was attached to her motion in opposition to the motion for summary judgment.

---

[21] Eddy Del Carmen Tave, Kevin Pimentel and Jorge Tarafa's transfers from Eaton's plant in Haina, Dominican Republic to Eaton's plant in Las Piedras, and Samuel Rivera's transfer, from Eaton's plant in Haina, Dominican Republic to Eaton's plant in Coamo.
[22] Jeannette Tripory's transfer from Eaton's plant in Cabo Rojo to Eaton's plant in Las Piedras.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Therefore, we believe that there is no reason to prevent the wrongful termination claim from being decided in a summary manner. Eaton submitted evidence that it complied with the employee retention order based on seniority established in Article 3 and with the remaining provisions of Law no. 80. Said allegations were not controverted. Since there is no controversy of essential facts as to the wrongful termination claim, summary judgment was appropriate, as a matter of law, dismissing the wrongful termination claim.

V

In accordance with the above, we decide that, according to the provisions of Law No. 80, seniority of an employee shall be calculated by adding the total time worked in the company, regardless of the employee's movement in different occupational classes. Since there are no essential facts in controversy, summary judgment is appropriate, dismissing the wrongful termination claim. The Judgment of the Court of Appeals, affirming the decision of the Court of First Instance, is hereby reversed.

Judgment shall be issued accordingly.

Anabelle Rodriguez Rodriguez
Associate Judge

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

IN THE SUPREME COURT OF PUERTO RICO

Zoraida Reyes Sánchez

    Respondent

                                  CC-2011-0191

          v.

Eaton Electrical D/B/A
Eaton Electrical Las Piedras; Jane Doe

    Petitioners

## JUDGMENT

San Juan, Puerto Rico, October 7, 2013.

In light of the grounds contained in the above Opinion, which are fully incorporated herein, we issue Judgment and decide that, according to the provisions of Law No. 80, seniority of an employee shall be calculated by adding the total amount of time worked in the company, regardless of the employee's movement in different occupational classes. Since there are no essential facts in controversy, summary judgment shall be issued, dismissing the claim of wrongful termination. The judgment of the Court of Appeals affirming the decision of the Court of First Instance is reversed.

Thus decided and ordered by the Court and certified by the Clerk of the Supreme Court. Associate Judge Pabon Charneco and Associate Judge Rivera Garcia concur with the result without issuing a written opinion.

                                    Aida Ileana Oquendo Graulau
                                    Clerk of the Supreme Court

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.