# United States Court of Appeals
## For the First Circuit

Nos. 15-1466
     15-1533

BERARDO A. QUILEZ-VELAR; MARTA BONELLI-CABAN;
BERARDO A. QUILEZ-BONELLI; CARLOS A. QUILEZ-BONELLI,

Plaintiffs, Appellants/Cross-Appellees,

v.

OX BODIES, INC.,

Defendant, Appellee/Cross-Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Silvia L. Carreño-Coll, U.S. Magistrate Judge]

Before

Lynch, Selya, and Lipez,
Circuit Judges.

José Luis Ubarri, with whom David W. Román and Ubarri & Roman Law Office were on brief, for appellants.
     John M. Roche, with whom Kevin S. Taylor, Arron Nesbitt, Taylor Anderson, LLP, Francisco J. Colon-Pagan, Francisco E. Colon-Ramirez, and Colón & Colón, P.S.C. were on brief, for appellee.

May 9, 2016

**LYNCH**, **Circuit Judge**.  This diversity case arose from the death of Maribel Quilez-Bonelli following an automobile accident involving Maribel's Jeep Liberty and a truck in use by Municipality of San Juan employees that had fitted onto its trash body an underride guard designed by Ox Bodies, Inc. ("Ox Bodies"). Maribel's family members brought suit in federal court against Ox Bodies, seeking damages for, inter alia, defective design of the underride guard.  A jury found Ox Bodies strictly liable for defective design and awarded the plaintiffs damages totaling $6,000,000.  By special verdict form, the jury assigned 20% of responsibility for the damages to Ox Bodies, 80% to the Municipality of San Juan, which was not a party in the suit, and 0% to Maribel.  The presiding magistrate judge ruled that judgment should enter on the strict liability claim in favor of the plaintiffs and that under Puerto Rico law, Ox Bodies should be held responsible only for 20% of the damages award, which equaled $1,200,000.  This appeal and cross-appeal followed.

Ox Bodies appeals the verdict, contending that the court should not have allowed the plaintiffs' expert to testify on an alternative underride guard design, and that absent such testimony, no reasonable jury could have found for the plaintiffs. The plaintiffs appeal the order limiting their recovery, arguing that under Puerto Rico law Ox Bodies should be held "jointly and severally liable to the plaintiff[s] for the totality of the

damages" -- the entire $6,000,000 award -- such that "the risk of loss of having to pay the entire judgment without obtaining contribution is borne by the defendant joint tortfeasor, not by the plaintiffs."

We affirm the court's decision to admit the plaintiffs' expert's testimony and so reject Ox Bodies' appeal. On the plaintiffs' appeal, in the absence of clear Puerto Rico law, we certify to the Puerto Rico Supreme Court the question of the extent of Ox Bodies' liability for the damages award.

I.

On October 1, 2010, Maribel Quilez-Bonelli, a then 28-year-old married woman and mother, was driving on a highway overpass near the city of San Juan in a 2004 Jeep Liberty with her toddler son when her Jeep collided with a stopped or slowly moving truck in use by Municipality of San Juan employees. The truck bore an underride guard near its rear that had been designed by Ox Bodies. The front of Maribel's Jeep hit the truck from behind and underrode the truck's trash body such that the truck penetrated the Jeep's passenger compartment and struck Maribel, lacerating her head and face. Maribel died from resulting injuries on October 6, 2010.

Maribel's family members, Berardo A. Quilez-Velar, Marta Bonelli-Caban, Berardo A. Quilez-Bonelli, and Carlos A. Quilez-

Bonelli[1] (collectively "Quilez"), brought suit in a Puerto Rico court and in federal court.[2] In a Puerto Rico trial court, Quilez filed an amended complaint on November 1, 2011, alleging negligence and seeking damages from, inter alia, the Commonwealth of Puerto Rico, the Puerto Rico Highway and Transportation Authority, Integrand Assurance Company ("Integrand"), and the Municipality of San Juan. The Municipality of San Juan and Integrand brought a third-party complaint for indemnification or contribution against, inter alia, Ox Bodies and its parent company, Truck Bodies & Equipment International, Inc. On May 16, 2014, the Municipality of San Juan, through its insurer, deposited with the Puerto Rico court its maximum policy limit, $500,000, for potential distribution if found liable. The Puerto Rico court ordered that the funds be distributed to the plaintiffs and dismissed the Municipality of San Juan from suit. Quilez expressly represented to this court that "[n]o settlement agreement was ever executed and [Quilez] granted no release [to] or assumed any liability" from the Municipality of San Juan or its insurer. Ox Bodies

---

[1] For simplicity, we refer to Maribel Quilez-Bonelli as "Maribel" and the plaintiffs as "Quilez" going forward.

[2] Maribel's surviving husband, Francisco Felix-Navas, and her surviving son, Francisco Andres Felix-Quilez, together also filed suit in a Puerto Rico court seeking damages resulting from Maribel's accident. The two Puerto Rico suits were consolidated.

conceded this point at oral argument, no document in the record establishes otherwise, and so we accept Quilez's representation.

On March 20, 2013, Quilez filed an amended complaint in its diversity action in federal district court against Ox Bodies, its parent company, and other defendants, for defective design and negligence under Puerto Rico law. Ox Bodies and its parent company brought a third-party claim for contribution and/or indemnification against, inter alia, the Municipality of San Juan. On May 16, 2014, the Municipality of San Juan notified the federal court that it had deposited $500,000 that day with the Puerto Rico court. On September 4, 2014, the federal court dismissed the Municipality of San Juan from the suit, without objection from Ox Bodies. Quilez-Velar v. Ox Bodies, Inc., No. CIV. 12-1780, 2014 WL 4385418, at *2, *3 (D.P.R. Sept. 4, 2014), reconsideration denied, No. CIV. 12-1780, 2014 WL 4656649 (D.P.R. Sept. 17, 2014). At the time of this appeal, the only remaining defendant is Ox Bodies.

On January 26, 2015, Ox Bodies filed a pre-trial motion in limine to exclude the testimony of Quilez's expert, Perry Ponder, arguing that "Mr. Ponder's report is devoid of any scientific analysis or calculations that would support" his conclusion that his proposed alternative underride guard design "would have been [a] safer design in the instant accident," and that his opinions should be excluded under Daubert v. Merrell Dow

Pharmaceuticals, Inc., 509 U.S. 579 (1993).[3]  Ox Bodies supported its motion with excerpts from Ponder's deposition and expert report, but it did not request that Ponder testify at a Daubert hearing.[4]  Quilez opposed the motion.

After reviewing both parties' submissions and relevant discovery materials, the magistrate judge, presiding pursuant to 28 U.S.C. § 636, denied the motion to exclude Ponder's testimony.  Quilez-Velar v. Ox Bodies, Inc., No. CIV. 12-1780, 2015 WL 418151, at *7 (D.P.R. Feb. 1, 2015).  The magistrate judge acknowledged Ox Bodies' argument that Ponder "did not perform specific tests or calculations in the course of his analysis," but found, first, that Ox Bodies failed to "show that these specific tests must have been carried out to provide a foundation for Ponder's opinions,"

---

[3]    Ox Bodies described a range of foregone calculations, including, inter alia, that Ponder "did not calculate the peak force of the collision, the coefficient of restitution, or the average or maximum forces of the impact"; "he did not conduct any analysis to determine the energy absorption that the proposed design change could sustain"; the reports he "relied upon evaluated impacts and forces that were different from those involved in this case"; "he did not perform any finite element analysis"; and he did not calculate the "loads created in a collision between a truck and a passenger vehicle."

[4]    A trial court may order a Daubert hearing to screen the proffer of scientific testimony to determine whether it crosses the Daubert threshold.  See, e.g., Samaan v. St. Joseph Hosp., 670 F.3d 21, 31 (1st Cir. 2012).  "[T]he scope of a Daubert hearing is not limited to an appraisal of an expert's credentials and techniques but also entails an examination of his conclusions to determine whether they flow rationally from the methodology employed."  Id. at 32.

and second, that upon "review[ing] Ponder's report, . . . its conclusions are well-explained, and its use of crash-test data appears appropriate." Id.

At trial, when Quilez moved to qualify Ponder as an expert, Ox Bodies requested voir dire, which was initially conducted in front of the jury and during which Ponder acknowledged that he did not crash-test his proposed alternative design and that none of his "rear underride guard designs" had ever been adopted by tilt or dump bed manufacturers. Ox Bodies conceded that Ponder was qualified as an accident reconstructionist but renewed its objection to Ponder's testifying about an alternative design for an underride guard. The court permitted further questioning by both parties outside the presence of the jury, spanning more than nine pages of transcript, before ultimately ruling that Ponder was qualified to testify about an alternative underride guard design.

Following a 12-day trial, the jury returned a verdict finding Ox Bodies strictly liable to Quilez for defective design. In the magistrate judge's March 3, 2015, memorandum and order, damages were apportioned as described earlier. Quilez-Velar v. Ox Bodies, Inc., No. CIV. 12-1780, 2015 WL 898255, at *1–3 (D.P.R. Mar. 3, 2015).

Ox Bodies appeals the admission of Ponder's testimony regarding a feasible safer alternative design, arguing that without Ponder's testimony no reasonable jury could have found it liable. "Under Puerto Rican tort law governing design defect claims, if the plaintiff proves that 'the product's design is the proximate cause of the damage,' the burden shifts to the defendant to prove that 'the benefits of the design at issue outweigh the risk of danger inherent in such a design.'" Quintana-Ruiz v. Hyundai Motor Corp., 303 F.3d 62, 69 (1st Cir. 2002) (quoting Aponte Rivera v. Sears Roebuck de P.R., Inc., 144 P.R. Dec. 830, 840 n.9 (1998), 1998 P.R.-Eng. 324486 n.9, 1998 WL 198857 n.9). Here, the court instructed the jury that if it found that the plaintiffs met their burden, then "[i]n deciding whether the benefits outweigh the risks," it should consider a number of factors, including "[t]he feasibility of an alternative safer design at the time of manufacture." Neither party contests this instruction.[5]

Ponder's expert report pointed to two key deficiencies in Ox Bodies' guard design: first, "[a]pproximately the outside 16

_____

[5] As we said in Quintana-Ruiz, "[t]here are at least three views of how the existence, or non-existence, of a mechanically feasible alternative design fits into the risk-utility balancing test," 303 F.3d at 71, and "[i]t is not clear what view the Puerto Rico courts would follow," id. at 72; see id. at 71-72 (describing the three views).

inches on each side of the rear of the [Ox Bodies] truck is left without any underride guarding at all," and second, "the guard is not sufficiently braced against impacts" because "[t]he outside span of the horizontal member is a beam supported at an interior location, but unsupported at the end," such that part of the guard "would begin to fail at a load of approximately 7,000 lbs." He further opined that "[t]he frontal collision safety features in [Maribel's] Jeep Liberty were rendered ineffective because the . . . truck lacked a substantially constructed underride guard."

Ponder's report went on to conclude that "[t]here exist feasible safer alternative rear impact guard designs for" the truck involved here. He noted a number of published studies that "offer completed truck underride guard designs." He outlined a design suited for the instant truck, "consist[ing] of a horizontal member positioned at the or very close to the rear extremity of the vehicle, long enough to protect the entire width of the truck," and "[d]iagonal bracing . . . placed at the truck bed's interior longitudinal members and side longitudinal members at a 45 degree angle along with a vertical support to complete the truss at the side extremities."

Our review of the magistrate judge's decision to admit Ponder's testimony on alternative design is for abuse of discretion. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999). "Absent a material error of law, we will not second-guess

such a discretionary determination unless it appears that the trial court 'committed a meaningful error in judgment.'" United States v. Jordan, 813 F.3d 442, 445 (1st Cir. 2016) (quoting Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co., 161 F.3d 77, 83 (1st Cir. 1998)). We find that under Federal Rule of Evidence 702, the magistrate judge's decision to admit Ponder's testimony was within her discretion.

> Under Federal Rule of Evidence 702:
>
> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The magistrate judge here must "serve[] as the gatekeeper for expert testimony by 'ensuring that [it] . . . both rests on a reliable foundation and is relevant to the task at hand.'"[6] Milward v. Rust-Oleum Corp., No. 13-2132, 2016 WL

---

[6] Although Ox Bodies' opening brief contends that whether a trial court has acted as a gatekeeper is subject to de novo review, see Smith v. Jenkins, 732 F.3d 51, 64 (1st Cir. 2013), Ox Bodies has not argued that the magistrate judge failed to perform that role. And so any argument on that issue is waived. See

1622620, at *3 (1st Cir. Apr. 25, 2016) (second and third alteration in original) (quoting Daubert, 509 U.S. at 597).

There is no dispute that testimony regarding alternative design was necessary to determine a fact at issue. The magistrate judge acted within her discretion in determining that Ponder's "scientific, technical, or other specialized knowledge" would help the jury determine that issue. Fed. R. Evid. 702(a). Ponder, a licensed professional engineer with a degree in mechanical engineering, has designed and tested at least four underride guards, reviewed crash tests and underride crashes, and lectured or published on the subjects of underride guard history, regulations, and side underride guard protections. He is also certified by the Accreditation Commission for Traffic Accident Reconstruction as an accident reconstructionist and has performed more than 400 accident reconstructions, including about twenty in underride cases. On appeal, Ox Bodies has not raised a developed

---

United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). Even if properly raised, such an argument would be difficult in these circumstances, as Ox Bodies neither requested a Daubert hearing nor mentioned Daubert in its objection to Ponder's qualifications during the voir dire at trial, and the magistrate judge entertained Ox Bodies' arguments in ruling on its motion in limine and permitted additional questioning at trial before ruling on Ponder's qualifications. See Jenkins, 732 F.3d at 64 ("If we are satisfied that the court did not altogether abdicate its role under Daubert, we review for abuse of discretion its decision to admit or exclude expert testimony.").

objection to the relevance of these experiences to the issue at hand.

Rather, the central question before us concerns whether the magistrate judge abused her discretion in concluding that Ponder's testimony on alternative design was sufficiently reliable to survive the admissibility threshold.[7]  Ox Bodies asserts that Ponder's testimony should have been excluded under Daubert because the expert must have actually tested the alternative design, either physically or using computer modeling, and Ponder did not do so. Ox Bodies' argument rests on a profound misunderstanding of Daubert, which eschews such per se approaches.  See Kumho Tire Co., 526 U.S. at 150 (holding that the inquiry "depends upon the particular circumstances of the particular case at issue"); Milward v. Acuity Specialty Prods. Grp., Inc., 639 F.3d 11, 16–20 (1st Cir. 2011) (conducting a fact-specific "reliability" inquiry).  "Testing is certainly one of the most common and useful reliability guideposts for a district court when contemplating proposed Rule 702 evidence."  Lapsley v. Xtek, Inc., 689 F.3d 802, 815 (7th Cir. 2012).  However, this circuit has never adopted a

---

[7]      Under Daubert, courts may consider a number of factors in assessing reliability: whether a theory or technique can be and has been tested; whether it has been put through peer review and has been published; whether it has a high error rate; and whether it has been generally accepted within the relevant scientific or technical community.  See Kumho Tire Co., 526 U.S. at 149–150; Ruiz-Troche, 161 F.3d at 80–81.

rule that an expert himself must have tested an alternative design, much less by building one.  We decline to adopt either requirement as a bright-line rule or as applied to this case.  See Kumho Tire Co., 526 U.S. at 150 ("[T]he factors [Daubert] mentions do not constitute a 'definitive checklist or test.'" (quoting Daubert, 509 U.S. at 593)); Johnson v. Manitowoc Boom Trucks, Inc., 484 F.3d 426, 431–33 (6th Cir. 2007) (declining to hold that testing is a requirement or the sole, dispositive factor under Daubert); Wagner v. Hesston Corp., 450 F.3d 756, 760 n.8 (8th Cir. 2006) (noting that lack of testing is a "non-dispositive factor"); Watkins v. Telsmith, Inc., 121 F.3d 984, 990 (5th Cir. 1997) ("Testing is not an 'absolute prerequisite' to the admission of expert testimony on alternative designs, but Rule 702 demands that experts 'adhere to the same standards of intellectual rigor that are demanded in their professional work.'" (quoting Cummins v. Lyle Indus., 93 F.3d 362, 369 (7th Cir. 1996))); Cummins, 93 F.3d at 369 ("We do not mean to suggest, of course, that hands-on testing is an absolute prerequisite to the admission of expert testimony.").[8]

---

[8]    Neither of the reported appellate cases Ox Bodies cites hold that testing is a dispositive requirement under Daubert either.  See Zaremba v. Gen. Motors Corp., 360 F.3d 355 (2d Cir. 2004); Oddi v. Ford Motor Co., 234 F.3d 136 (3d Cir. 2000). Moreover, unlike here, those cases involved review of exclusion of expert testimony.  See Zaremba, 360 F.3d at 357–58; Oddi, 234 F.3d at 156, 158.  Ox Bodies also cites an unpublished opinion of a divided Tenth Circuit panel that is irrelevant.  See Hoffman v.

In any event, the record permitted a factfinder to conclude that Ponder did do some testing, and here, the record supports the magistrate judge's determination that there were alternate methods of testing from which the jury could evaluate reliability. See Johnson, 484 F.3d at 431. First, Ponder testified that he looked at "crash test information" from several sources, including a 1980 study available from the National Technical Information System, "a number of patents," "crash test data from 1971 from Aeronautical Research Associates," and other crash tests done under contract with the National Highway Traffic Safety Administration ("NHTSA"). Ox Bodies argues that Ponder's conclusion regarding the guard in the instant case does not "fit" with or follow from the studies. In its motion in limine, Ox Bodies argued that those studies "evaluated impacts and forces that were different from those involved in this case." But Ponder testified in voir dire that at least some of the "information is transferrable . . . [to] underride guards for any type of vehicle." He explained in response to a question about crash-test data asked during his deposition, for example, that "a 90-degree frontal test is what NHTSA uses as confirmation for crash worthiness and

_____

Ford Motor Co., 493 F. App'x 962, 975–76 (10th Cir. 2012) (finding expert testimony unreliable where expert did not compare his laboratory test results to either the accelerations on the buckle in the instant accident or to published rollover crash tests, and inconsistently claimed there was a lack of rollover crash data).

passenger safety in crash types -- all crash types."  Upon review of the arguments and documents in the record properly submitted to us,[9] we cannot say that it was an abuse of discretion for the magistrate judge to conclude, as she did at trial, that "[Ponder] had enough data that did not require him to conduct further testing for research to base his opinions on."

Second, Ponder testified that he tested his design using "stress calculation[s]."  Cf. Lapsley, 689 F.3d at 815 ("A mathematical or computer model is a perfectly acceptable form of test.").  His reliance in part on a Society of Automotive Engineers ("SAE") article, in order to determine the energy involved as well as "compar[e] the damage to [the SAE article's] damage matrix index," was appropriate.[10]  Ponder also testified that he performed "photogrammetry analysis" using calculations performed by hand to test how his design would react upon impact.

---

[9]    We limit our review to those documents in the record. We will not consider supposed excerpts from Ponder's notes that both Ox Bodies and Quilez attempt to submit to this court, as neither party indicates their location in the record before the magistrate judge, and we have not been able to pinpoint any of these references.

[10]    On appeal, Ox Bodies argues that because Ponder failed to identify any industry manufacturer or government agency that has adopted his design or a "similar" one, his design lacks "peer review."  Ox Bodies did not raise this exact argument in its motion in limine or at trial, and so it is waived.  See Sierra Club v. Wagner, 555 F.3d 21, 26 (1st Cir. 2009).

Ox Bodies contends that Ponder failed to perform calculations its expert said were necessary in testing his design. However, as the magistrate judge correctly stated in ruling on Ox Bodies' motion in limine, "Defendants do not show that these specific tests must have been carried out to provide a foundation for Ponder's opinions." Moreover, Ponder's report and his responses when questioned during his deposition demonstrate support for his findings. We emphasize that in most cases, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 596. And here, Ox Bodies "had ample opportunity to cross examine" Ponder "and to use its own expert witness -- which it did." Diefenbach v. Sheridan Transp., 229 F.3d 27, 31 (1st Cir. 2000).

Finally, on appeal Ox Bodies argues that Ponder did not show that his alternative design would have "withstood the force of the crash" and would have prevented intrusion into the passenger compartment, or that the alternative design guard would have caused "the Jeep to rotate away from the truck on impact, rather than continuing further into the trash body." Ox Bodies did not raise these objections in its motion in limine or in its objections at trial. Arguably, the contention is waived. Sierra Club v. Wagner, 555 F.3d 21, 26 (1st Cir. 2009). But even assuming that the more

general argument -- that Ponder has not shown that his alternative design would have prevented Maribel's injuries -- was properly raised, that argument goes to the credibility of his testimony that the design was "safer."  As these arguments were appropriate to make to the jury when it weighed the evidence, they do not lead us to conclude that the testimony's admission was in error.

In short, admitting Ponder's testimony on alternative design was not a "meaningful error in judgment," Ruiz-Troche, 161 F.3d at 83 (quoting Anderson v. Cryovac, Inc., 862 F.2d 910, 923 (1st Cir. 1988)), and we affirm the magistrate judge's decision to admit his testimony.

## III.

The sole issue in Quilez's appeal is whether the magistrate judge erred by not holding Ox Bodies jointly and severally liable[11] for the entire $6,000,000 damages award.  That decision was based on a particular reading of the Puerto Rico Supreme Court's decisions in Cortijo Walker v. P.R. Water Res. Auth., 91 P.R. 557 (1964); Widow of Andino v. P.R. Water Res. Auth., 93 P.R. 168 (1966); and Rosario Crespo v. P.R. Water Res. Auth., 94 P.R. 799 (1967).  See Quilez-Velar, 2015 WL 898255, at *2-3.  On our reading, those precedents do not clearly answer the

---

[11]     Joint and several liability sometimes goes by the name "solidary" liability in Puerto Rico. Ramos v. Caparra Dairy, Inc., 16 P.R. Offic. Trans. 78, 81 (1985).

- 17 -

question at hand, and the question raises important public policy concerns. Because the issue is determinative of Quilez's appeal, we find "the prudent course is to certify the question to that court better suited to address the issue."[12] Pagán-Colón v. Walgreens of San Patricio, Inc., 697 F.3d 1, 18 (1st Cir. 2012). We explain, without in any sense meaning to influence the outcome.

The underlying assumption of the magistrate judge's reasoning is that Ox Bodies had no right of contribution against the Municipality of San Juan and that it necessarily followed that Quilez could not recover the sum of $6,000,000 against Ox Bodies on a joint and several liability theory. There are many questions, as discussed below, about whether contribution is or is not available, and whether the reasoning tying the existence of contribution to the existence of joint and several liability is valid under Puerto Rico law. Quilez posits that even if Ox Bodies does not have a right of contribution, Ox Bodies is nonetheless responsible to Quilez as a jointly and severally liable defendant. That is, the municipal cap does not excuse Ox Bodies from paying the sum of $6,000,000; and so, it cannot have the effect of shifting the risk of non-payment of the full sum to Quilez.

---

[12] At oral argument, the parties agreed that this court could certify the issue, and we subsequently afforded them an opportunity to propose language for the certification question.

The magistrate judge's March 3, 2015, order read the Puerto Rico Supreme Court's decision in Cortijo Walker, which disallowed a third-party suit by a defendant against a plaintiff's employer covered by Puerto Rico's workmen's compensation statute, 91 P.R. at 559, 566, to preclude Ox Bodies from seeking contribution from the Municipality of San Juan.  Quilez-Velar, 2015 WL 898255, at *2.  Then, the magistrate judge held that, under Widow of Andino and Rosario Crespo, where "a defendant's general right to contribution is lost due to a joint-tortfeasor's statutory immunity," 2015 WL 898255, at *2, in a tort action a "defendant should be held liable for the damage only in proportion to its fault," id. at *3 (quoting Widow of Andino, 93 P.R. at 180); see Rosario-Crespo, 94 P.R. at 813.[13]  Ox Bodies urges us to affirm based on this reasoning.

---

[13]    In a previous order, the magistrate judge also held that Puerto Rico would likely follow Restatement (Third) of Torts: Products Liability § 16 (Am. Law Inst. 1998), such that when an injury is indivisible, if a plaintiff shows that a defectively designed product "is a substantial factor in increasing the plaintiff's harm beyond that which would have resulted from other causes, the product seller is subject to liability for . . . plaintiff's harm attributable to the defect and other causes" and is "liable with other parties who bear legal responsibility for causing the harm, determined by applicable rules of joint and several liability."  Restatement (Third) of Torts: Prod. Liab. § 16 (Am. Law Inst. 1998); see Quilez-Velar v. Ox Bodies, Inc., No. CIV. 12-1780, 2015 WL 418156, at *1, *2 (D.P.R. Feb. 2, 2015). Neither party has challenged this predicate conclusion of law.  We invite the Puerto Rico Supreme Court to weigh in on this point, if it chooses to do so, in the course of answering our certified question.

Quilez disputes both steps in the court's reasoning. Quilez argues that the cap on municipal damages at issue here is not analogous to the workmen's compensation statute's remedial restriction in Cortijo Walker. This view, according to Quilez, finds some support in the statutory text. The statutory scheme in Cortijo Walker was a workmen's compensation scheme barring all tort actions against covered employers. See Cortijo Walker, 91 P.R. at 560 (quoting the Workmen's Accident Compensation Act of 1935, § 20, which established that compensation under the Act "shall be the only remedy against the employer"). In contrast, the municipal damages cap codified at P.R. Laws Ann. tit. 21, § 4704 permits liability in "[c]laims against municipalities for personal or property damages caused by the fault or negligence of the municipality" up to a certain amount, in this case up to the "the collectible indemnity actually provided" by the Municipality of San Juan's insurance policy, P.R. Laws Ann. tit. 26, § 2004. See Quilez-Velar, 2015 WL 898255, at *2 n.2. Other jurisdictions have recognized this type of municipal damages cap as a partial waiver of sovereign immunity. See, e.g., Morris v. Mass. Mar. Acad., 565 N.E.2d 422, 428 (Mass. 1991) ("The [governmental liability] limitation is contained in the same sentence in which sovereign immunity is waived. . . . The cap is one term of the waiver."). In this case, there is an argument that because the municipal damages cap operates differently than the remedial

restriction in the workmen's compensation statute by permitting suits up to a certain amount of damages, Ox Bodies is able to seek at least partial contribution from the Municipality of San Juan. It is notable that the Municipality of San Juan has acted consistent with this view, including by depositing its insurance policy limit with the Puerto Rico court. Even while ruling that Ox Bodies lacked a right of contribution against the Municipality of San Juan, the magistrate judge noted that "[t]heoretically, Ox Bodies could seek contribution from the municipality up to the limits of its insurance policy." Quilez-Velar, 2015 WL 898255, at *2 n.4.[14]

Ox Bodies counters that the municipal cap and the workmen's compensation remedial restriction provision are materially indistinguishable. It points to the magistrate judge's reading of Cortijo Walker as holding that where a statute precludes a party's liability, a third-party claim against that party is prohibited because it "would amount to doing indirectly what the lawmaker has forbidden to be done directly." Cortijo Walker, 91 P.R. at 564. In Ox Bodies' view, the magistrate judge correctly interpreted the municipal damages cap here as a legislative policy

---

[14]    At oral argument, Ox Bodies conceded this point, but then argued that nonetheless, "there is no right of contribution for the portion of the damages allocated to the Municipality for which the plaintiffs are asking the court to hold Ox Bodies liable."

- 21 -

choice to "protect[] . . . the municipal fisc" and any right to contribution as a forbidden attempt to indirectly get at that fisc. See Quilez-Velar, 2015 WL 898255, at *2.

Quilez suggests that Ox Bodies has misunderstood Cortijo Walker's reasoning, suggesting that the quoted language is dicta, and the court's holding actually resides in the preceding paragraph. There, the Cortijo Walker court reasoned that the right to contribution was lacking because under the particular statutory scheme -- the workmen's compensation statute -- "[t]he employer is not liable to the workman in tort," and so "he cannot be a joint tortfeasor with the third person and third-party plaintiff." 91 P.R. at 564. The court explained that the defendant lacked a right of contribution against the plaintiff's employer because "[t]he workman's claim or remedy against his employer is solely for the statutory benefits; his claim against the third party is for damages. Both causes of action are in law different in kind and they cannot result in a common legal liability." Id. Quilez argues that Cortijo Walker's reasoning is inapposite, as the action here against Ox Bodies and the third-party action against the Municipality of San Juan both seek damages based in tort; the magistrate judge has determined the Municipality of San Juan to be a joint-tortfeasor, see Quilez-Velar v. Ox Bodies, Inc., No. CIV. 12-1780, 2015 WL 418156, at *2 (D.P.R. Feb. 2, 2015); Quilez-Velar, 2015 WL 898255, at *2, and Ox Bodies has not contested that

ruling.  Quilez suggests that practical inability to obtain contribution -- here because of a deposit with the Puerto Rico court that only by happenstance preceded judgment in the federal suit -- poses a legal question concerning proper allocation of risk of non-payment from a liable defendant, not concerning whether Ox Bodies is unable to seek contribution because of some kind of immunity.

Quilez also views the magistrate judge's subsequent reliance on Widow of Andino and Rosario Crespo for the rule that a "defendant should be held liable for the damage only in proportion to its fault," Widow of Andino, 93 P.R. at 180; see Rosario-Crespo, 94 P.R. at 813, as misplaced.[15] See Quilez-Velar, 2015 WL 898255, at *2.  Quilez asserts that Puerto Rico case law almost always prioritizes a plaintiff's recovery through joint and several liability.  Joint and several liability is "[t]he well-

_____

[15]    The magistrate judge stated that "[i]t should be noted that the Supreme Court's holdings in Widow of Andino and Rosario-Crespo were not based on any language in the workers' compensation statute."  Quilez-Velar, 2015 WL 898255, at *2.  Both Widow of Andino and Rosario Crespo explicitly rely on Cortijo Walker's reading of the workmen's compensation statute as not permitting an employer to be held liable in explaining why a defendant should be held liable only for its proportion of fault.  See Rosario-Crespo, 94 P.R. at 812-13; Widow of Andino, 93 P.R. at 179-80 (discussing the operation of workmen's compensation employer remedial restriction to "absolute[ly]" preclude recovery from the employer, before holding that "[i]n view of the foregoing, and of the fact that this case is governed by the special Act on the matter, defendant should be held liable for the damage only in proportion to its fault").

known rule." Szendrey v. Hospicare, Inc., 2003 TSPR 18, 2003 WL 751582 (P.R. Feb. 14, 2003); see Ruiz-Troche, 161 F.3d at 87 (applying Puerto Rico law); Ramos v. Caparra Dairy, Inc., 16 P.R. Offic. Trans. 78, 81-82 (1985). Quilez acknowledges that the right to contribution establishes that "the onerous effect between the joint tortfeasors should be distributed in proportion to their respective degree of negligence," Szendrey, 2003 WL 751582, but, in the usual case, Quilez argues, the risk of non-payment of one debtor is placed on the defendants, not the plaintiff, id. The theory is that even if Ox Bodies lacks a right of contribution -- either in fact or in law -- the general rule of joint and several liability should apply. No Puerto Rico Supreme Court case cited by the parties resolves this issue, which the parties also concede.

Ultimately, "we lack 'sufficient guidance to allow us reasonably to predict' which of our . . . options the Puerto Rico Supreme Court would choose," Carrasquillo-Ortiz v. Am. Airlines, Inc., 812 F.3d 195, 199-200 (1st Cir. 2016) (quoting Pagán-Colón, 697 F.3d at 18). Because the allocation of risk is an important question of Puerto Rico tort law, it is determinative of the appeal at issue, and the precedents available are not clear, we think the better course is to certify the question in accordance with the rules of the Puerto Rico Supreme Court.

IV.

We _affirm_ the magistrate judge's decision to admit the testimony of Quilez's expert.  We direct entry of judgment against Ox Bodies' appeal.

As to Quilez's appeal, we hereby _certify_ to the Supreme Court of Puerto Rico the following question:

> Was the magistrate judge correct in this case to limit the damages against Ox Bodies to $1,200,000 and deny Quilez a joint and several damages award of $6,000,000 against Ox Bodies?

We welcome the opinion of the Puerto Rico Supreme Court on any other aspect of Puerto Rico law that the Justices believe should be clarified in order to assist in the resolution of the certified question or to give context to their reply.

The Clerk of this court is directed to forward to the Supreme Court of Puerto Rico, under the official seal of this court, a copy of the certified question and this opinion, along with a copy of the briefs and appendices filed by the parties.  We retain jurisdiction over Quilez's appeal pending that court's determination.