# United States Court of Appeals
## For the First Circuit

No. 17-1810, 18-1936

HOSPITAL SAN ANTONIO, INC., or alternatively, John Doe
Corporation, d/b/a Hospital San Antonio,

Defendant, Appellant,

DR. OSVALDO QUILES-GIOVANNETTI; NATIONAL FIRE & MARINE INSURANCE
COMPANY; SINDICATO DE ASEGURADORES PARA LA SUSCRIPCION CONJUNTA
DE SEGUROS DE RESPONSABILIDAD PROFESIONAL MEDICO-HOSPITALARIA
(SIMED); MARKETFORM MANAGING AGENCY LIMITED ON BEHALF OF
SYNDICATE 2468; JANE DOE; CONJUGAL PARTNERSHIP DOE-QUILES; JOHN
DOES 1, 2, AND 3; CORPORATIONS A, B, AND C; UNKNOWN INSURANCE
COMPANIES A THROUGH H,

Defendants,

v.

JESSICA OQUENDO-LORENZO, personally and on behalf of her
conjugal partnership with Rolando Lopez-Montanez; ROLANDO LOPEZ-
MONTANEZ, personally and on behalf of his conjugal partnership
with Jessica Oquendo-Lorenzo; CONJUGAL PARTNERSHIP LOPEZ-
OQUENDO,

Plaintiffs, Appellees.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Bruce J. McGiverin, U.S. Magistrate Judge]

Before

Kayatta and Howard,
Circuit Judges.*

---

\* Judge Torruella heard argument in these appeals, but did

_____

Carlos G. Martínez-Vivas, with whom Martinez-Texidor & Martínez-Vivas was on brief, for appellant.

David Efron, with whom Alberto J. Pérez Hernández, Etienne Totti Del Toro, and Law Offices David Efron, PC were on brief, for appellees.

_____

August 25, 2022

_____

_____

not participate in the decision.

**HOWARD**, **Circuit Judge**. Before us are consolidated appeals of a final judgment entered by the district court and the court's subsequent denial of a Rule 60(b) motion. This case involves two Puerto Rico statutes -- Article 41.050 of the Puerto Rico Insurance Code, P.R. Laws Ann. tit. 26, § 4105, which immunizes a set of healthcare workers from suit, and Section 3077, which waives Puerto Rico's sovereign immunity and establishes liability caps in certain circumstances. P.R. Laws Ann. tit. 32, § 3077. The question before us is whether appellant, Hospital San Antonio, Inc., benefits from the liability limits in Section 3077. We affirm the district court's final judgment below. We also affirm the district court's denial of appellant's Rule 60(b) motion.

## I.

### A. Factual Background

In July 2013, Jessica Oquendo-Lorenzo -- then pregnant -- visited Dr. Osvaldo Quiles-Giovannetti for a prenatal exam. After examining Oquendo-Lorenzo, Dr. Quiles ordered her admission to San Antonio Hospital. San Antonio Hospital is a public hospital owned by the Municipality of Mayagüez. San Antonio Hospital is operated by Hospital San Antonio, Inc. ("HSA"), a private corporation organized under the laws of the Commonwealth of Puerto Rico.

- 3 -

The next day, Dr. Quiles ordered a cesarean section on Oquendo-Lorenzo, resulting in the birth of Oquendo-Lorenzo's daughter, J.L.O. J.L.O. was admitted to the neonatal intensive care unit at San Antonio Hospital and ultimately transferred to the University Pediatric Hospital at Centro Medico in San Juan, Puerto Rico, until she was discharged in January 2014. That August, J.L.O. died.

Oquendo-Lorenzo and Rolando López-Montañez, J.L.O.'s father, (collectively, "Oquendo") brought a medical malpractice suit against HSA, Dr. Quiles, and their insurance carriers, alleging that J.L.O.'s birth injuries and death resulted from negligence on the part of Dr. Quiles and hospital staff.

## B. Procedural History

HSA moved below for partial summary judgment on the basis that it benefited from liability limits and immunity conferred by two Puerto Rico statutes: Section 3077, P.R. Laws Ann. tit. 32, § 3077, a statute that authorizes suits against Puerto Rico in certain circumstances but places caps on liability, and Article 41.050 of the Puerto Rico Insurance Code, which immunizes certain healthcare workers from suit. P.R. Laws Ann. tit. 26, § 4105. The district court denied HSA's motion and held that HSA was not a covered entity under either statute. HSA filed a motion for reconsideration, which was also denied. Following that ruling -- and while a second motion for reconsideration by HSA was pending

- 4 -

-- in June 2017, the district court approved and adopted a joint settlement agreement proposed by the parties.

Under the settlement, Oquendo agreed to release the claims against Dr. Quiles and Quiles' insurance carrier in exchange for $75,000.  Oquendo also released the claims against HSA's insurance companies in exchange for $270,000, with $50,000 allocated to Oquendo's attorney.

The settlement noted HSA's position throughout the litigation that it was covered under liability limits established by Article 41.050 and Section 3077.  The parties stipulated that, if HSA did not benefit from limited liability, Oquendo's damages would include an additional $105,000 in excess of the $75,000 and $270,000 payments specified in the settlement.  Noting the district court's ruling that HSA did not benefit from limited liability, the agreement provided that -- should the court deny HSA's second motion for reconsideration -- "the [d]istrict [c]ourt would enter judgment against [HSA] in the amount of $105,000."

HSA "reserve[d], preserve[d], and maintain[ed] its defense, as to the extent of the applicability of the immunity and/or the statutory liability limit and/or cap" and preserved its right to appeal.  HSA also "preserve[d] and maintain[ed] the right to request to the United States First Circuit the certification of the issues and matters to the Supreme Court of Puerto Rico."  Finally, HSA committed to "appeal to the United States First

- 5 -

Circuit the judgment adverse to it, as to the denial of the cap on liability and/or immunity."

The district court denied HSA's second motion for reconsideration and, on June 27, 2017, entered a partial judgment against HSA in favor of appellees for $105,000. On June 28, 2017, the district court entered a final judgment dismissing all claims against Dr. Quiles and the insurance companies. HSA timely appealed after entry of the final judgment. HSA alternatively requests that we certify the statutory interpretation issues before us to the Puerto Rico Supreme Court.

On November 14, 2017, and while this appeal was pending, HSA filed a Rule 60(b) motion for relief from judgment on the basis that Law No. 99-2017 ("Law 99"), enacted on August 13, 2017, substantially amended Article 41.050 to expressly cover HSA. The district court interpreted the settlement agreement as precluding HSA from seeking further relief from the district court and denied the motion in September 2018. HSA timely appealed that ruling.

## II. Jurisdiction

In consolidated appeals, we must have independent jurisdiction to hear both appeals. See Galvin v. U.S. Bank, N.A., 852 F.3d 146, 154 (1st Cir. 2017). We conclude that we have jurisdiction over both appeals in this case.

There is no question that we have jurisdiction to hear HSA's appeal of the final judgment below. See 28 U.S.C. § 1291.

The parties dispute whether we have jurisdiction to review the district court's denial of HSA's Rule 60(b) motion. We do.

First, the district court had jurisdiction to entertain the Rule 60(b) motion despite HSA's pending appeal because the district court has "continuing jurisdiction during an appeal to act in aid of the appeal." Puerto Rico v. SS Zoe Colocotroni, 601 F.2d 39, 41 (1st Cir. 1979). Thus, when "an appeal is pending from a final judgment, parties may file Rule 60(b) motions directly in the district court." Id. at 42. The denial of a Rule 60(b) motion "is appealable as a separate final order." Stone v. I.N.S., 514 U.S. 386, 401 (1995). If a Rule 60(b) motion is denied, "and the denial appealed, we will entertain a request to consolidate that appeal with the pending appeal from final judgment." Colocotroni, 601 F.2d at 42; see also Stone, 514 U.S. at 401. Because the district court had jurisdiction to deny HSA's post-judgment motion -- and we have jurisdiction to hear appeal of that denial -- there are no jurisdictional defects and we may proceed to the merits of both appeals.

### III.  Standard of Review

Our review of a denial of summary judgment is de novo, Miller v. Sunapee Difference, LLC, 918 F.3d 172, 176 (1st Cir. 2019), as is our review of a district court's statutory interpretation. Hannon v. City of Newton, 744 F.3d 759, 765 (1st Cir. 2014).

- 7 -

With respect to HSA's request to certify the statutory interpretation questions to the Puerto Rico Supreme Court, we may certify questions when we decide that available precedent is not clear, and the questions may be determinative in the appeal at issue. Quilez-Velar v. Ox Bodies, Inc., 823 F.3d 712, 723 (1st Cir. 2016). However, "even in the absence of controlling precedent, certification would be inappropriate where state law is sufficiently clear to allow us to predict its course." Pagán-Colón v. Walgreens of San Patricio, Inc., 697 F.3d 1, 18 (1st Cir. 2012) (quoting In Re Engage, Inc., 544 F.3d 50, 53 (1st Cir. 2008)).

Finally, we review the denial of a Rule 60(b) motion to reconsider for abuse of discretion, though "embedded findings of fact are reviewed for clear error, questions of law are reviewed de novo, and judgment calls are subjected to classic abuse-of-discretion review." Ungar v. Palestine Liberation Org., 599 F.3d 79, 83 (1st Cir. 2010); see also Roger Edwards, LLC v. Fiddes & Son Ltd., 427 F.3d 129, 132 (1st Cir. 2005). Relevant here, interpretation of a settlement agreement is also reviewed de novo. Home Ins. Co. v. Pan Am. Grain Mfg. Co. Inc., 397 F.3d 12, 15 (1st Cir. 2005).

## IV. Discussion

As a federal court sitting in diversity, "we look to the pronouncements of a state's highest court in order to discern the

contours of that state's law." González Figueroa v. J.C. Penney Puerto Rico, Inc., 568 F.3d 313, 318 (1st Cir. 2009). For purposes of determining applicable Puerto Rico law, we look to Puerto Rico Supreme Court precedent. Id. Where, as here, the Puerto Rico Supreme Court has not ruled on the issue before us, we must anticipate how the court would rule if it were deciding the questions presented. Id. In doing so, we look to the "pertinent statutory language and analogous decisions of the [Puerto Rico] Supreme Court." Id.

Our interpretation of Puerto Rico statutes "begins with the text of the underlying statute, and ends there as well if the text is unambiguous." In re Plaza Resort at Palmas, Inc., 741 F.3d 269, 274 (1st Cir. 2014). The Puerto Rico Civil Code mandates that "when a law is clear and free from all ambiguity, the letter of the same shall not be disregarded, under the pretext of fulfilling the spirit thereof." Id. (quoting P.R. Laws Ann. tit. 31, § 14). If we find the statute ambiguous, the Puerto Rico Supreme Court requires that "we seek the legislative intent as expressed in its legislative history, its statement of motives, the different House and Senate committee reports or floor debates." Estado Libre Asociado de P.R. v. Nw. Selecta, Inc., 185 P.R. Dec. 40, 2012 WL 1109131 (2012). Following this instruction, we would typically begin our analysis with the text of the relevant statutes. But there is a wrinkle here. We must first determine

- 9 -

which version of Article 41.050 to interpret. That determination turns on whether a 2017 amendment to Article 41.050 -- Law 99 -- applies retroactively to Oquendo's claim. If it does, we must interpret and apply the amended statute. If it does not apply retroactively, we will interpret the same version that the district court interpreted below. We conclude that Law 99 does not apply retroactively to Oquendo's claim.

## A. Law 150

The district court applied the 2013 version of Article 41.050. We agree that that was appropriate, and follow suit.

Article 41.050 provides certain medical providers with limitations on their liability. Since its passage in 1986, it has been amended many times. See Kenyon v. Cedeno-Rivera, Nos. 17-1686 & 17-2217, slip op. at 8-10 (1st Cir. Aug. 25, 2022). In December 2013, the legislature amended Article 41.050 by enacting Law No. 150-2013 ("Law 150"). Law 150 contained a retroactivity provision, explaining that the amendments would be given immediate retroactive effect, so long as the cause of action was filed after June 27, 2011, and had not been already adjudicated or settled "in a final and binding manner."

The district court concluded that because of the retroactivity provision, Law 150 applied. We agree. Specifically, the plain text of the retroactivity provision compels that conclusion -- the case in front of the district court had been

- 10 -

filed after June 27, 2011, and had yet to be adjudicated or settled in a final and binding manner.  Thus, the district court correctly interpreted Law 150 and applied it to the present case.

### B.  Law 99

Law 99, further amending Article 41.050, was approved on August 13, 2017.  HSA argues that this law governs and that it clearly grants HSA a liability limit.

The Puerto Rico Supreme Court recognizes that the Legislative Assembly may retroactively apply civil statutes.  See González Fuentes v. E.L.A., 167 P.R. Dec. 400, 409-10, 2006 WL 6110919 (2006).  Any legislative intent to give retroactive effect to a law "should be expressly and clearly stated in the statute." Vázquez v. Morales, 14 P.R. Offic. Trans. 1059, 1069 (1983).  Our task, then, is to determine whether Law 99 contains such a provision and whether that provision extends retroactive effect of the statute to Oquendo's claim.

Section 3 of Law 99 states:

> This Act shall start to govern immediately after its approval and shall have retroactive effect over any cause of action and judicial procedure that has been constituted or filed before any Court or competent adjudicative forum since June 27, 2011, on forward and that has not been adjudicated or settled in a final and binding manner by a court or competent forum, or with regard to any fact taking place on or after June 27, 2011, over which a final and binding judgment has not yet been issued.

Law No. 99-2017 (English translation).

- 11 -

For purposes of this case, we read Law 99 to apply retroactively except to disputes that had been adjudicated or settled in a final and binding manner by a court or other competent forum prior to the law's approval on August 13, 2017. Unlike our conclusion with regard to Law 150, because we conclude that the case below had been adjudicated and settled in a final and binding manner before the enactment of Law 99, we hold that Oquendo's claim falls within Law 99's retroactivity exception.[1]

---

[1] The untranslated text of Section 3 contains the phrase "final y firme." Law No. 99-2017 (Spanish). We are cognizant that our case law and Puerto Rico case law have translated "final y firme" as final and unappealable. See Cruz v. Melecio, 204 F.3d 14, 20 (1st Cir. 2000) (citing Worldwide Food Dis., Inc. v. Colón Bermúdez, 133 P.R. Dec. 827, 831, 1993 WL 840035 (1993)). We rely on the parties to resolve issues related to reliability and accuracy of Spanish to English translations. United States v. Morales-Madera, 352 F.3d 1, 8 (1st Cir. 2003) (noting preference for parties to agree to accurate translation or, alternatively, to submit competing expert testimony on translation accuracy to jury). Even when parties "disagree on how to translate certain phrases . . . it is not our prerogative to resolve such disputes." United States v. Rivera-Rosario, 300 F.3d 1, 9 (1st Cir. 2002). And we strictly enforce our English language rules. Puerto Ricans for Puerto Rico Party v. Dalmau, 544 F.3d 58, 67 (1st Cir. 2008) ("Allowing the outcome of a case to turn on a non-English language document would be at odds with the premise of a unified and integrated federal courts system . . . .") (quotations omitted). Because Oquendo does not object to the accuracy of the translation of Law 99 -- submitted by HSA -- we accept HSA's translation at face value. Morales-Madera, 352 F.3d at 8 (translation issue not before the court where party did not object to translation's accuracy below and made no claim on appeal that translation was inaccurate); see also Bordas & Co. v. Pizzaro Serrano, 314 F.2d 291, 292 (1st Cir. 1963) ("[I]t is what the interpreter states on the record, not what the court may, conceivably, have understood the witness to say, that must control both the trial and the appeal.").

The Puerto Rico Supreme Court deems a judgment final "if it determines the merits of the controversy or the rights of the parties, without leaving anything for future determination." Cortés Román v. E.L.A., 6 P.R. Offic. Trans. 708, 716-17 (1977). Likewise, a judgment is final "when it terminates the litigation between the parties on the merits of the case and leaves nothing to be done but to enforce, by execution, what has been determined." Id. (quoting Dalmau v. Quiñones, 78 P.R.R. 525, 530 (1955)); see also Ramos v. Colón, 153 P.R. Dec. 534, 2001 WL 242595 (2001) ("It is well settled that a 'final' judgment is [t]hat which puts an end to a judicial claim and from which appeal may be taken." (emphasis added)).

It is also axiomatic that a final judgment is binding on the parties to a suit. See Mitchell v. First Nat. Bank of Chicago, 180 U.S. 471, 481 (1901) (noting that a holding "by a court having jurisdiction of the parties . . . binds the parties . . . so long as the judgment remains unmodified or unreversed"); see also Granados Navedo v. Rodríguez Estrada I, 24 P.R. Offic. Trans. 1, 47 (1989) (citing Martin v. Wilks, 490 U.S. 755, 761-65 (1989)).

Similarly, "[t]here is little question that, under the laws of Puerto Rico and as a general principle of law, a judgment entered upon a settlement of compromise generally is a final determination." Sangiovanni Hernandez v. Dominicana de Aviacion, C. Por A., 556 F.2d 611, 614 (1st Cir. 1977). And the Puerto Rico

- 13 -

Supreme Court has "repeatedly held that a stipulation signed by the parties and accepted by the court to end a litigation . . . constitutes a binding compromise." Ex parte Negrón Rivera y Bonilla, 20 P.R. Offic. Trans. 63, 77 (1987).

As noted above, the settlement agreement released Oquendo's claims against Dr. Quiles and the insurance carriers in exchange for monetary compensation. These claims were settled in a final and binding manner. With respect to the claims against HSA, the agreement stipulated that the district court had ruled that HSA was not entitled to any statutory cap on damages and therefore, "in the absence of a statutory cap, [HSA's additional] legal liability would be $105,000." And if the district court denied HSA's second motion to reconsider, HSA agreed that "the [d]istrict [c]ourt would enter judgment against [HSA] in the amount of $105,000." However, the settlement also stated that HSA would appeal the district court's ruling or seek certification of the liability limit issue to the Puerto Rico Supreme Court to "determine whether [HSA] owes plaintiffs $105,000, or whether it owes plaintiffs nothing."

The district court adopted the parties' settlement and denied HSA's second motion for reconsideration. At that point, the district court had "determine[d] the merits of the controversy," Cortés Róman, 6 P.R. Offic. Trans. at 716-17, and had nothing left to do but "to enforce . . . by execution" its

- 14 -

determination.  Id. (quoting Dalmau, 78 P.R.R. at 530).  The district court did exactly that.  On June 27, 2017, the court entered partial judgment against HSA for $105,000.  The next day, the court entered final judgment dismissing the remaining claims against the other defendants and closed the case.  HSA was able to appeal from that judgment only because it was final.  Accordingly, we conclude that the case had been adjudicated and settled in a final manner before the approval of Law 99 on August 13, 2017.  We must therefore look to the pre-Law 99 version of Article 41.050 applied by the district court to determine the outcome of this dispute.

## C.  The Statutory Scheme

The version of Article 41.050 interpreted by the district court[2] states in relevant part (broken up by sentence for ease of reading):

> [1]  No healthcare professional (employee or contractor), and may be included as defendants in a civil action of claim for damages for professional malpractice guilt or negligence caused in the performance of their profession, while said professional acts in the compliance of his duties and functions, including teaching, as employee of the Commonwealth of Puerto Rico, its dependencies, instrumentalities, the Comprehensive Cancer Center of the University Puerto Rico and the municipalities.

---

[2] We use the translation provided by the parties to our court. We note that the district court interpreted a different translation, the content of which was substantively the same as the translation we use here.

- 15 -

[2] No health professional whatsoever, either employee or contractor, may be included for the performance of his profession in the compliance of his duties and functions, including teaching, in the neonatal and pediatric intensive care units, operating rooms, emergency rooms and trauma wards of the San Antonio Hospital of Mayagüez, at the Mayagüez Medical Center- Ramón Emeterio Betances Hospital-, its Trauma Center and its dependencies . . . .

[3] The same limits shall apply to students and residents who use the operating rooms, emergency rooms, trauma wards and facilities of neonatal and pediatric intensive care units of the San Antonio Hospital and the Mayagüez Medical Center -Ramón Emeterio Betances Hospital- as teaching workshop and of university research.

[4] In those cases, the intensive care professionals and pediatricians of the neonatal intensive care units; and the obstetrician/gynecologists and surgeons of the San Antonio Hospital, Mayagüez Medical Center -Ramón Emeterio Betances Hospital- and the corresponding Trauma Center shall be subject to the limits of liability that Act No. 104 of June 29, 1995, as amended, [P.R. Laws Ann. tit. 32, § 3077] establishes for the State in similar circumstances.

P.R. Laws Ann. tit. 26, § 4105 (2013).

The first two sentences of the statute plainly immunize healthcare professionals from malpractice claims if they meet the listed professional criteria and work at one of the qualified facilities, which includes San Antonio Hospital. The fourth sentence identifies a subgroup of healthcare professionals -- pediatric and neonatal intensive care specialists and pediatricians and obstetricians/gynecologists and surgeons of San

- 16 -

Antonio Hospital -- and states that they "shall be subject to the limits of liability" set forth in Section 3077 of Title 32.

Section 3077, in turn, reads as follows:

> Authorization is hereby granted to sue the Commonwealth of Puerto Rico before the Court of First Instance of Puerto Rico for the causes set forth in the following actions:
> [1] (a) Actions for damages to persons or property up to the sum of seventy-five thousand dollars ($75,000) caused by a culpable or negligent action or omission of any official, agent or employee of the Commonwealth or of any other person acting in an official capacity within the scope of his/her duty, office or employment; or actions for damages for alleged actions of medical and hospital malpractice of the healthcare professionals working in the areas of obstetrics, orthopedics, general surgery or trauma exclusively at public health institutions of the Commonwealth of Puerto Rico, its agencies, instrumentalities and/[o]r municipalities, regardless of whether said institutions are being administered or operated by a private entity.
> [2] When because of said action or omission damages are caused to more than one person or when there are several causes of action to which a single injured party is entitled, the compensation for all damages caused by said action or omission may not exceed the sum of one hundred and fifty thousand dollars ($150,000).

P.R. Laws Ann. tit. 32, § 3077 (2011).

Section 3077 waives immunity in certain cases but also provides liability-limiting statutory caps on damages. Reading the statutes together, Section 3077 establishes liability limits and Article 41.050 explains that said liability limits cover the

- 17 -

subset of health professionals identified in the last sentence of Article 41.050.

HSA argues that we must read the statute's last sentence as extending the liability caps to HSA because Article 41.050 grants immunity to health professionals working at San Antonio Hospital. This suggested interpretation bends the text of the statute too far. Article 41.050 extends Section 3077's liability limits to specified doctors "<u>of</u> the San Antonio Hospital" and plainly does not extend the liability limits to HSA itself. Law 150 (emphasis added).

Undeterred, HSA argues that Section 3077 independently grants liability limits to HSA because the statute covers "public health institutions of the Commonwealth of Puerto Rico, its agencies, instrumentalities and/[o]r municipalities, regardless of whether said institutions are being administered or operated by a private entity." P.R. Laws Ann. tit. 32, § 3077.

That argument fails. Section 3077 does not establish liability caps for HSA -- Section 3077 authorizes suits against the Commonwealth of Puerto Rico in certain circumstances, including instances of malpractice at public health institutions, but imposes liability caps. Such an abrogation of immunity (and its attendant language about the extent of that waiver) has no independent bearing on a suit against HSA, a private company.

Nor, for that matter, is HSA a "public health institution[]." It is a private entity that administers and operates San Antonio Hospital, which is owned by the Municipality of Mayagüez. The language on which HSA relies limits Mayagüez's liability arising from its ownership of San Antonio Hospital. As the private operator and administrator of San Antonio Hospital, HSA is not a covered entity within the scope of Section 3077.

Defeated by the plain text of the statutes, HSA asks us to look beyond the text of the statutes to discern the true intent of the legislature. But "the clear text of the law is the perfect expression of the legislative intent." Nw. Selecta, 185 P.R. Dec. 40, 2012 WL 1109131. If a statute's text shows that "the legislative intent is clear, unequivocal, and free from ambiguity, we are bound by its terms and need not look beyond its wording." Id. We decline HSA's invitation to do so.

Nor are we bound by the Puerto Rico court decisions HSA cites.[3] Though cases from Puerto Rico intermediate appellate courts are "not binding on a federal court sitting in diversity," they "are entitled to some weight." Andrew Robinson Intern., Inc. v. Hartford Fire Ins. Co., 547 F.3d 48, 55 (1st Cir. 2008). However, the single Puerto Rico appellate court case HSA cites,

---

[3] We note as well that we rely on the cases provided by the parties. They are responsible for updating the court on any legal developments that transpire after we hear an appeal, and they have not brought any intervening law to our attention.

- 19 -

<u>Nieves Vega</u> v. <u>Hospital San Antonio</u>, No. ISCI201500812, 2016 WL 3391541 (P.R. Cir. May 31, 2016), provides little guidance because it dealt with the issue of physician immunity under Article 41.050 -- an issue not relevant here.

Because we can resolve the interpretive issues before us, there is no need to certify the statutory interpretation questions to the Puerto Rico Supreme Court. <u>See</u> <u>Vill. of Bedford Park</u> v. <u>Expedia, Inc.</u>, 876 F.3d 296, 302 (7th Cir. 2017) (declining to certify question involving "routine questions of statutory interpretation that this Court is well-equipped to handle").[4]

**V.**

The remaining issue requiring our attention is whether the district court's denial of HSA's Rule 60(b) motion was an abuse of discretion. Though we style our standard of review as "abuse of discretion" review, we recognize that, as part of our analysis, we review factual findings for clear error, questions of law de novo, and judgment calls for abuse of discretion. <u>Ungar</u>, 599 F.3d at 83. We conclude that the district court properly denied HSA's Rule 60(b) motion.

As part of the settlement agreement, HSA only reserved its rights to appeal to the First Circuit and to request that the

---

[4] Though we conclude that HSA does not benefit from Section 3077's liability limits, this holding is limited to the pre-Law 99 version of Article 41.050. We take no view as to whether Law 99 extends Section 3077's liability limits to HSA.

First Circuit certify the issue of whether HSA was covered by Section 3077's liability limits to the Puerto Rico Supreme Court. Because HSA did not reserve its right to file a Rule 60(b) motion with the district court in the event of an intervening change in law, the district court held that the settlement agreement "precludes the Hospital from further pursuing this issue with the district court in a post-judgment motion."

Denial of the motion was appropriate on that basis. HSA's only available forum for judicial relief at that point was the First Circuit. We affirm the denial of the Rule 60(b) motion.

The district court's judgment and order denying the Rule 60(b) motion are **affirmed**.